Kevin D. FLORAY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 444, 1997.

Supreme Court of Delaware.

Submitted: Sept. 29, 1998.
Decided: Dec. 2, 1998.

Bernard J. O'Donnell (argued), Assistant Public Defender, Wilmington, for appellant.

John Williams (argued), Deputy Attorney General, Dover, for appellee.

Before VEASEY, C.J., and HOLLAND and HARTNETT, JJ.

HARTNETT, Justice.

Following a jury trial in the Superior Court, Kevin D. Floray was convicted of three counts of unlawful sexual intercourse first degree (11 Del.C. § 775), two counts of continuous sexual abuse of a child (11 Del.C. § 778), and attempted unlawful sexual intercourse first degree (11 Del.C. § 531). In this direct appeal, Floray challenges certain evidentiary rulings and an instruction to the jury. Floray's arguments are based on three grounds all of which are without merit.

First, Floray contends that the Superior Court improperly excluded expert testimony concerning the propensity of children, who are the subject of parental custody and visitation conflicts, to falsify allegations of abuse. Second, Floray claims error in the admission of the expert testimony of the examining physician that his physical findings were "consistent with child abuse" when the physical findings were equally consistent with no abuse. Lastly, Floray contends the Court erred in instructing the jury that, if believed beyond a reasonable doubt, the testimony of the alleged victims alone was sufficient to support a conviction.

We find the Superior Court correctly excluded the expert testimony regarding the credibility of the complaining child victims. We find that the expert testimony of the examining physician was relevant and although some questions posed to him were improperly phrased, the errors were harmless. We also find that part of one jury instruction was not appropriate, but any error was harmless. We therefore affirm.

## I. Background

In 1997, Kevin Floray was tried on charges that he had sexually molested his seven-year-old daughter and her ten-year-old friend. A major part of the State's case consisted of the testimony of the alleged victims, and the testimony of an eyewitness to one of the alleged acts. In addition, the prosecution introduced the expert testimony of a physician who testified that his examination of the alleged victims yielded findings "consistent with sexual abuse." Floray consistently denied the accusations, and claimed that his ex-wife, the mother of one of the victims, coached the two girls to falsify their stories of abuse. Floray was convicted of all the charges and sentenced to 64 years of Level V imprisonment.

## II. Expert Testimony on Intrafamily Child Sexual Abuse

Floray contends that the Superior Court erred when it refused to allow Lawrence Raifman, Ph.D., to testify as an expert witness concerning the susceptibility of young children to be programmed to falsify abuse information about fathers in hostile custody and visitation situations.[1] Dr. Raifman proposed to testify:

"as to general principles of social and behavioral sciences to assist the jury in determining each of the two alleged child victim's credibility concerning their claims that the Defendant sexually abused them in the face of the Defendant's denials" [and] that the jury "must be particularly careful in judging the credibility of the alleged victims in this case because the circumstances surrounding their relationship with the Defendant, their parents, the social workers, and prosecution and state agents lends itself to fabricating allegations of sexual abuse." [2]

The Superior Court denied the motion in limine of Floray whereby he requested the admission of the expert psychological testimony, finding that Floray had not established any behavior of the alleged victims that was inconsistent with the charge of sexual abuse, such as recantation or delay in reporting or any other behavior that required expert testimony to aid the jury's understanding of "child sexual abuse accom-

---

1. This expert also proposed to testify that Floray did not fit the psychological profile of a pedophiliac. The Appellant has abandoned this issue on appeal.

2. *State v. Floray*, Del.Super., 715 A.2d 855, 857 (1997) (quoting Defendant's Motion in Limine at 1).

modation syndrome." [3] The Court concluded that because no "special nexus" was "shown between the evidence of common behavior and the facts of the case, the use of such common behavior evidence [was] highly prejudicial." [4] Additionally, because Floray had not shown "that the proffered expert testimony would amount to anything more than an attack on the alleged victims' credibility," the probative value of the expert testimony was limited.[5] The Court therefore found that any probative value of the expert testimony was substantially outweighed by the danger of unfair prejudice to the State and would likely result in confusion of issues to the jury.

■ If the trial court, under the Delaware Uniform Rules of Evidence (D.R.E.) 403, excludes evidence because of the concern of unfair prejudice to a party or confusion of the issues to the jury, we review for abuse of discretion.[6] If however, the evidence in question was offered for a permissible purpose, but excluded, we review *de novo.*[7]

■ This Court has previously addressed the extent that expert testimony can be used to assist the trier of fact in evaluating the testimony of a child sexual abuse victim.[8] The general rule is that the common experience of the jury provides a sufficient basis to assess the credibility of the child-witness and the testimony of an expert witness is not necessary to assist the jury.[9] In intrafamily child sexual abuse cases, however, this Court has recognized an exception to the general rule. Expert testimony is admissible to help the jury understand the child-victim's behavior when the child "has displayed behavior (... delay in reporting) or made statements (... recantation) which, to [an] average [lay person], are superficially inconsistent with the occurrence of sexual abuse and which are established as especially attributable to intrafamily child sexual abuse rather than simply stress or trauma in general." [10] The use of expert evidence in child sexual abuse prosecutions is limited "to assist the finder of fact, whether judge or jury, in evaluating the psychological dynamics and resulting behavior patterns of alleged victims of child abuse, where the child's behavior is not within the common experience of the average juror." [11] In such a case, expert testimony must be "given in general terms and directed to behavior factors in evidence ... [and may not attempt] to quantify the veracity of a particular witness or provide a statistical test for truth telling." [12] The purpose of the expert testimony is only "to provide the trier of fact with background concerning the behavior of the alleged child abuse victim based on the expert's experience and training so that the jury or judge, may place the child witness' testimony in a behavioral context." [13] Conditions are therefore imposed to safeguard the limited use of such testimony.[14]

---

3. The study of "child sexual abuse accommodation syndrome" involves examining the behavior of child accusers in molestation cases, specifically, those behaviors superficially inconsistent with their verbal accounts of the incidents in question. *See generally* Lisa R. Askowitz & Michael H. Graham, *The Reliability of Expert Psychological Testimony in Child Abuse Prosecutions,* 15 Cardozo L.Rev.2027 (1994).

4. *State v. Floray,* Del.Super., 715 A.2d at 864.

5. *Id.*

6. *Abrams v. State,* Del.Supr., 689 A.2d 1185, 1188–89 (1997).

7. *Allen v. State,* Del.Supr., 644 A.2d 982, 985 (1994).

8. *Wheat v. State,* Del.Supr., 527 A.2d 269 (1987).

9. *Id.* at 273.

10. *Id.* at 274.

11. *Id.* at 275.

12. *Id.*

13. *Id.*

14. In order for the expert testimony to be admissible, the following conditions must be met: 1) pre-trial notice of the intent to call the expert; 2) any voir dire on the expert's qualifications or subject areas of proposed testimony must be conducted outside the presence of the jury; 3) an expert can not directly or indirectly express opinions on the veracity of a specific witness and can not "attempt to quantify the probability of truth or falsity of either the initial allegations of abuse or subsequent statements;" *Id.;* and 4) a jury trial requires specific instructions concerning the significance and limited use of the expert's testimony. *Id.*

■ In this case, the Superior Court was correct in holding that the recognized exception did not apply to the ten-year-old victim because she was not a family member. Additionally, Floray failed to establish any evidence as to behavior that the jury needed assistance in understanding. The issue was the credibility of the alleged child victims and was properly left to the jury. The expert testimony, therefore, was not admissible for a permissible purpose and the Superior Court did not err or abuse its discretion in excluding Dr. Raifman's testimony.

### III. Expert Testimony of Examining Physician

Floray next contends that the testimony of Dr. Allen DeJong should have been excluded for two reasons. Floray first asserts that Dr. DeJong's non-specific findings were not relevant under D.R.E. 401. Floray also argues that if the evidence was relevant, his conclusion that his findings were "consistent with child sexual abuse" was unduly prejudicial under D.R.E. 403 because it was likely to mislead the jury.

■ Dr. DeJong testified at trial that Floray's daughter suffered from a "labial agglutination" that was caused by some type of irritation, most commonly caused by poor hygiene, either too much or too little. Over Floray's objection, Dr. DeJong testified that although the child had a normal sleeve-like hymen for a seven-year-old, these physical findings were "consistent with child sexual abuse." Dr. DeJong also testified that although his physical examination of the ten-year-old friend resulted in normal findings, these results were "consistent with sexual abuse." Dr. DeJong explained that nonviolent sexual abuse may not leave behind bruis-

ing or scarring, and for that reason, his findings did not necessarily run counter to the victims's allegations.

■ Whether to admit evidence as relevant is within the sound discretion of the trial court and will not be reversed by this Court absent an abuse of discretion.[15] Under D.R.E. 401, relevance is defined broadly as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[16]

The results of Dr. DeJong's physical examination of the two child victims are probative of the truth of the allegations of abuse. The existence of any physical evidence would be relevant to verify the children's claims. Likewise, the jury would want to know the doctor's interpretation of his findings. Absent the doctor's expert opinion, the jury would not know what weight to attach to the existence of the labial agglutination, or to the doctor's failure to discover any other signs of abuse. Dr. DeJong's statements that his findings are "consistent" with abuse constituted an explanation to the jury that it should not disregard the claims simply because his examination could not affirmatively verify them. The doctor's testimony was relevant and therefore the trial court did not abuse its discretion in admitting the evidence.

■ The State conceded at oral argument in this Court, however, that some of its questions to Dr. DeJong were improperly phrased.[17] Generally when an expert offers a medical opinion it should be stated in terms of "a reasonable medical probability"[18] or "a reasonable medical certainty."[19] Floray,

---

15. *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983).

16. D.R.E. 401.

17. The State phrased the question regarding Floray's daughter's examination as follows: "based upon your examination, your training and experience, do you have an opinion as to whether the examination or the findings from your examination are consistent with child sexual abuse." The question regarding the examination to the ten-year-old friend was phrased as follows:

"[b]ased on the examination of [the ten-year-old friend], do you have an opinion as to whether the findings of that examination are consistent with child sexual abuse?"

18. *See Money v. Manville Corp. Asbestos Disease Compensation Trust Fund*, Del.Supr., 596 A.2d 1372, 1377 (1991); *Dutton v. State*, Del.Supr., 452 A.2d 127, 141 (1982).

19. *Oxendine v. State*, Del.Supr., 528 A.2d 870, 873 (1987). *See generally* Jeff L. Lewin, *The Genesis and Evolution of Legal Uncertainty about*

however, did not object to the State leaving out the "probability" or "certainty" component of the questions. At trial, Floray objected only to the testimony on the basis of hearsay, relevance and its probative value being substantially outweighed by unfair prejudice of enhancing the credibility of the witnesses thus invading the prerogative of the jury. "An objection [to the admissibility of evidence] not properly preserved at trial is generally waived for purposes of appeal."[20] Because Floray's objection was predicated on different grounds than the proper phrasing of the question, our review on that issue is limited to a finding of plain error.[21] To establish plain error the "error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[22]

Based on a careful review of the record, we find no plain error or abuse of discretion in the admission of Dr. DeJong's testimony. Floray had the opportunity to, and did, cross examine Dr. DeJong and elicit that his findings were just as consistent with a finding that no sexual abuse occurred and that his findings did not show that there was any physical evidence proving that either of the child-complainants had been abused. Floray's attorney asked Dr. DeJong whether, if in all of the approximately 2,000 cases where he had performed physical examinations in situations of alleged sexual abuse, his findings were consistent with sexual abuse. Dr. DeJong answered affirmatively, later explaining that sexual abuse does not necessarily leave any conclusive physical evidence.

Additionally, Floray explored other possible causes of the physical findings, particularly his daughter's labial agglutination. Dr. DeJong responded in cross examination:

> There is no specific physical evidence of sexual abuse on either of the children,

[Floray's daughter] having the nonspecific physical finding of the labial agglutination that could be caused by abuse or might be caused by other factors. And there certainly is nothing specific to link one particular individual to the sexual abuse.

Dr. DeJong also noted that "just being in a bathtub can cause [the labial agglutination] if you soak too long or use the wrong type of soap." Therefore, any prejudice that might have occurred by the phrasing of the question was alleviated by the cross examination conducted by Floray and there was no plain error arising from the admission of the testimony.

### IV. Jury Instruction on Sufficiency of the Evidence

■ Floray, lastly, contends that the trial court erred in charging the jury, over his objection, with the instruction: "[t]he testimony of the child complaining witnesses, standing alone, if believed beyond a reasonable doubt, can be sufficient to support a criminal conviction for the crimes charged." Floray contends that although this is a correct statement of the law, it was out of place and misleading in the context of a jury instruction for the purpose of guidance during deliberations of guilt or innocence. Additionally, Floray contends that because the trial court added this unnecessary instruction, it improperly gave the appearance to the jury that the court was focusing on this evidence and it therefore amounted to an improper comment on the evidence in violation of the Delaware Constitution.[23]

■ A trial court's jury instruction is not a ground for reversal if it is "reasonably informative and not misleading, judged by common practices and standards of verbal communication."[24] Floray's claim that the

*"Reasonable Medical Certainty"*, 57 Md.L.Rev. 380 (1998).

**20.** *Weedon v. State*, Del.Supr., 647 A.2d 1078, 1082 (1994); Supr.Ct.R. 8.

**21.** *Weedon*, 647 A.2d at 1083; *Stevenson v. Henning*, Del.Supr., 268 A.2d 872, 873 (1970).

**22.** *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986), *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

**23.** *See* Del. Const. art. IV, § 19 quoted *infra*.

**24.** *Baker v. Reid*, Del.Supr., 57 A.2d 103, 109 (1947), *quoted in Flamer v. State*, Del.Supr., 490 A.2d 104, 128 (1983). *See also Chance v. State*, Del.Supr., 685 A.2d 351, 354 (1996); *Probst v. State*, Del.Supr., 547 A.2d 114, 119 (1988).

**1138** ■

instruction in this case was unconstitutional, however, triggers a *de novo* review.[25]

Del. Const. art. IV, § 19 states: "Judges shall not charge juries with respect to matters of fact, but may state the question of fact in issue and declare the law." This Court has held that the testimony of the victim alone is sufficient to support a criminal conviction.[26] Consequently, we conclude that the trial judge made a correct statement of the law and not a comment on the evidence.[27]

■■■■■ Although we find that the challenged sentence was not a comment on the evidence, we recognize the possibility that placing too much emphasis on specific evidence could, in different circumstances, mislead a jury. It is clear in this case, however, that the challenged jury instruction correctly stated the law, and the only possible objection is that the statement might have misled the jury. "As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[28] While it would have been preferable if the challenged sentence had not been included in the jury charge, some inaccuracies are permissible in jury instructions, and a reversal is required only if the "deficiency undermined the ability of the jury 'to intelligently perform its duty in returning a verdict.' "[29] All the jury instructions therefore must be reviewed as a whole and no statement will be "viewed in a vacuum."[30]

After carefully reviewing all the jury instructions it is clear there was no prejudice to Floray. The jurors were advised that they were the sole judges of the credibility of the witness and of the weight to be given to the testimony of each witness. The jurors were advised several times that they must be convinced beyond a reasonable doubt of the defendant's guilt. They were advised that it was their duty to reconcile conflicting testimony, if reasonably possible, and to disregard any portion of the testimony that in their judgment was unworthy of consideration. The jury received instructions on possible bias or interest of witness and the instructions emphasized that the determination of guilt beyond a reasonable doubt was entirely up to the jury. We are therefore satisfied that under all the circumstances, the challenged sentence in the jury instructions was harmless error.

Although we deem the error harmless because of the lack of demonstrable prejudice, we recognize the possibility of a jury being misled in some situations, and discourage the use of such an instruction in the future.

## V. Conclusion

The judgments of conviction of the Superior Court are therefore **AFFIRMED.**

25. *See Grace v. State,* Del.Supr., 658 A.2d 1011, 1015 (1995).

26. *Everette v. State,* Del.Supr., No. 392, 1996, Walsh, J., 1997 WL 317406 (Apr. 22, 1997), Order at 2; *Hammond v. State,* Del.Supr., No. 112, 1991, Walsh J., 1992 WL 135162 (Mar. 6, 1992), Order at 3; *Styler v. State,* Del.Supr., 417 A.2d 948, 950 (1980).

27. *See Lunnon v. State,* 710 A.2d 197, 201 (1998) (concluding that a missing evidence instruction is a ruling on the admissibility of evidence and is not a prohibited charge on matters of fact); *Hamann v. State,* Del.Supr., 565 A.2d 924, 929

(1989) (holding that the correct statement of the law in the jury instructions was not a comment on the evidence).

28. *Flamer v. State,* Del.Supr., 490 A.2d 104, 128 (1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983).

29. *Probst,* 547 A.2d at 119, *citing Storey v. Castner,* Del.Supr., 314 A.2d 187, 194 (1973) *quoted in Flamer v. State,* Del.Supr., 490 A.2d 104, 128 (1983).

30. *Flamer,* at 128.