Jason McKINLEY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 264, 2007.

Supreme Court of Delaware.

Submitted: Feb. 27, 2008.
Decided: March 31, 2008.

Eugene J. Maurer, Jr., Esquire, Wilmington, Delaware, for appellant.

Paul R. Wallace, Esquire (argued) and Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, Jason R. McKinley ("McKinley"), appeals from a final judgment of conviction entered in the Superior Court. McKinley waived his right to a jury trial. A Superior Court judge found McKinley guilty of Murder in the Second Degree, Assault in the Third Degree, Reckless Endangering in the First Degree and Driving during License Suspension. McKinley appeals only the conviction of Murder in the Second Degree.

McKinley's sole argument on appeal is that the trial judge erred by finding that the State had presented sufficient evidence to establish the "cruel, wicked and depraved indifference to human life" required to convict him of Murder in the Second Degree, as opposed to the lesser charge of Manslaughter. We have determined that the State's evidence was sufficient and that the trial judge's decision is supported by the record. Therefore, the judgment of the Superior Court must be affirmed.

### FACTS

Shortly after 11 p.m. on April 8, 2006, forty-year-old Erle Dobson ("Dobson") was returning home from his job at Home Depot. Dobson drove along Route 273 to the intersection of Route 141. At that intersection, Dobson stopped for a red light. When the light turned green, Dobson entered the intersection and was hit broadside by a Honda Civic. From the impact, Dobson's vehicle was sent careening into a telephone poll, whereupon it caught fire and became immediately engulfed in flames. Dobson died as a result of the accident.

McKinley was driving the Honda Civic at the time of the accident. Both he and his passenger, Alicia Carr ("Carr"), survived the collision. The accident was caused by McKinley's running of the intersection's red light at a speed between 88 and 98 miles per hour.

Several minutes before the accident, Newport police officer, James Ryan, observed McKinley speeding. Officer Ryan pursued McKinley and attempted to stop him with the police vehicle's emergency equipment activated. Instead of pulling over, McKinley led Officer Ryan on a high speed chase. Ignoring expressed concern from his passenger,[1] McKinley turned into a residential area where Officer Ryan saw McKinley run several stop signs and observed McKinley driving down the wrong side of the roadway.

---

1. Carr testified that she asked McKinley, "Why don't you just take the ticket?" She testified that he responded by saying, "Just put on your seatbelt" because "I don't want to get in trouble."

Thereafter, McKinley ran a red light and turned onto Route 141. Officer Ryan continued to pursue McKinley. Officer Ryan then observed McKinley run two more red lights and pass several vehicles on the left shoulder. At that point, the officer re-activated his emergency lights, but lost sight of McKinley near William Penn High School. Officer Ryan next observed the fire resulting from McKinley's and Dobson's collision at the intersection of Routes 141 and 273.

At trial, Officer Ryan testified that he estimated McKinley's speed to be in excess of 80 miles per hour during the pursuit. Corporal Henry Brown and Officer Reynaldo Ruiz, of the Newport Police Department, also witnessed the chase. Both testified that they believed McKinley to be traveling at a speed of approximately 100 miles per hour. McKinley's passenger, Carr, agreed that McKinley was traveling at about 100 miles per hour.

Sergeant Matthew Cox, an accident reconstruction expert, testified that when McKinley applied his brakes moments before impact, he was traveling between 93 and 100 miles per hour and at the moment of impact McKinley's speed was between 88 and 98 miles per hour. Sergeant Cox further testified that the force of the impact was so great that it propelled Dobson's vehicle (which had just begun to accelerate from a complete stop) into the telephone pole at a speed between 28 and 31 miles per hour.

In addition to the above testimony, the trial judge was able to consider McKinley's prior driving record that came into evidence by stipulation of the parties under Delaware Rule of Evidence 404(b).[2] That evidence included: thirteen moving violations from nine separate convictions, two license suspensions and the fact that McKinley had attended two Division of Motor Vehicle counseling sessions and a motor vehicle behavioral modification course. The trial judge also heard testimony from Officer Michael Hopkins, an officer with the New Castle County Police.

Officer Hopkins testified that in July 2005, approximately eight months before the fatal collision with Dobson, he charged McKinley with driving violations stemming from an incident where McKinley had been drag racing. At that time, Officer Hopkins offered to dismiss the charges against McKinley, if McKinley was able to keep his driving record clean until the trial date on the drag racing charges. Instead of complying with the terms of Officer Hopkin's offer, McKinley accumulated four additional moving violations between the date he was stopped and his February 2006 trial date.

At the drag racing trial, Officer Hopkins testified and McKinley was convicted. At that proceeding, Officer Hopkins testified that he had twice warned McKinley "that if he continued to drive in such a manner as what I had seen him do and what his driving record indicated that there was a very good chance at some point he was going to kill somebody." The trial judge gave the same warning to McKinley when the sentence for the drag racing charges was imposed.

Based on all of the foregoing evidence, the Superior Court judge convicted

---

**2.** D.R.E. 404(b) states: Other crimes, wrongs or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Conducting the appropriate D.R.E. 403 and *De Shields* analysis, the trial judge found that the character evidence was admissible as bearing on McKinley's state of mind at the time of the accident.

McKinley of Murder in the Second Degree, Assault in the Third Degree, Reckless Endangering in the First Degree and Driving during License Suspension.

### McKinley's Contentions

■ On appeal, McKinley takes issue only with the trial judge's finding of guilt on the second degree murder charge. McKinley admits that his conduct was reckless, and thus, he concedes that he is guilty of Manslaughter.[3] McKinley argues, however, that his conduct did not evidence "cruel, wicked and depraved indifference to human life," as required for conviction of Murder in the Second Degree.[4] In other words, McKinley claims that the evidence was insufficient to convict him of Murder in the Second Degree. "Where a claim of insufficient evidence has been fairly presented to the court below, we will review the trial record and determine whether any rational trier of fact, viewing all the evidence in the light most favorable to the prosecution, could have found every essential element of the offense beyond a reasonable doubt."[5]

■ Title 11, section 635(1) states that "[a] person is guilty of second degree murder when the person recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life." "[T]he words 'cruel, wicked and depraved indifference to human life[ ]' are intended to define a particular state of mind which must be found to have existed in the defendant at the time the crime was committed—the *mens rea*."[6] That *mens rea* element differentiates Murder in the Second Degree from the lesser crime of Manslaughter.[7] The Delaware Criminal Code defines Manslaughter as "recklessly caus[ing] the death of another person."[8] "The distinction [between manslaughter and second degree murder] is one of degree only. The decision turns on the actor's conduct."[9]

McKinley argues that his admittedly reckless conduct was not of such a degree as to constitute Murder in the Second Degree. McKinley's argument rests primarily on three factors which he contends militate against finding that he manifested a "cruel, wicked and depraved indifference to human life" at the time of the accident. First, he argues that unlike the cases cited by the trial court in its decision,[10] McKin-

---

3. *Hamilton v. State,* 816 A.2d 770, 773 (Del. 2003)("Both Murder in the Second Degree and Manslaughter require the same 'reckless' state of mind....").

4. Del.Code Ann. tit. 11, § 635(1).

5. *Young v. State,* 1992 WL 115175, *1 (Del. May 6, 1992)(citing *Robertson v. State,* 596 A.2d 1345, 1355 (Del.1991)). Accord, *Barnett v. State,* 691 A.2d 614, 618 (Del.1997).

6. *Waters v. State,* 443 A.2d 500, 504 (Del. 1982).

7. Delaware Criminal Code with Commentary, § 635 (1973). ("Subsection (1) covers reckless killing which is distinguished from manslaughter by 'circumstances which manifest a cruel, wicked, and depraved indifference to human life.' ").

8. Del.Code Ann. tit. 11, § 632(1).

9. Delaware Criminal Code with Commentary, § 635 (1973).

10. The trial judge cited *Moorhead v. State,* 638 A.2d 52 (Del.1994)(defendant convicted of murder second degree where he had a blood alcohol concentration of .22 percent and a concentration of cocaine in excess of .36 percent); *Lilly v. State,* 649 A.2d 1055 (Del.1994)(defendant convicted of murder in the second degree with a blood alcohol content of .11); and *Secrest v. State,* 679 A.2d 58 (Del.1996)(defendant convicted of murder second degree with a blood alcohol level of .22 percent).

ley was not under the influence of drugs or alcohol at the time of the accident. Second, McKinley asserts that because there was testimony that he attempted to "slow down" at the intersections and immediately before the fatal collision, that testimony demonstrates his concern for the safety of others on the roadways, and therefore precludes a finding of "cruel, wicked and depraved indifference to human life." Third, McKinley contends the expert testimony he presented at trial demonstrated that he suffers from conditions that impair his ability to process information, and those impairments prevented him from forming the *mens rea* required for second degree murder.

### Bright-line Rule Rejected

McKinley asks this Court to adopt a bright-line rule whereby driving under the influence of drugs or alcohol is the determinative factor in elevating a conviction involving a fatality that was caused by the reckless operation of a motor vehicle from manslaughter to second degree murder. We decline to adopt such a rule for two reasons. First, although the trial judge did consider several vehicular homicide cases (all involving drugs or alcohol) where the defendants were convicted of second degree murder, alcohol or drug use was not the determinative factor.[11] Second, where as here, the defendant was sober, such a bright-line rule would preclude the trier of fact from considering other ex-

traordinarily egregious behavior, such as that exhibited by McKinley during the police chase.

### Manslaughter or Second Degree Murder

McKinley argues that because there is testimony that he attempted to "slow down" before disregarding the stop signs and traffic lights, that evidence negates the requisite *mens rea* for Murder in the Second Degree. McKinley's *mens rea* argument fails on that specific point because reducing speed to between 88 and 98 miles per hour is not "slowing down." Moreover, McKinley's *mens rea* argument fails generally because it disregards the comprehensive nature of a *mens rea* analysis.

In explaining the requisite *mens rea,* this Court stated in *Waters v. State* that Delaware's Murder in the Second Degree statute intended to embrace the common law concepts of "malice aforethought."[12] "Subsection (1) covers reckless killing which is distinguished from manslaughter by 'circumstances which manifest a cruel, wicked, and depraved indifference to human life.' This is not unlike the former law which, by use of the concept of 'implied malice' treated the most aggravated reckless killings as second-degree murder."[13] In *Waters,* this Court also cited with approval the jury instructions in *State v. Winsett*[14] as providing an appropriate explanation of the necessary *mens rea:*

> [M]alice includes all acts done voluntarily and with a wilful disregard for the

11. *Moorhead v. State,* 638 A.2d 52 (Del.1994); *Lilly v. State,* 649 A.2d 1055 (1994); *Secrest v. State,* 679 A.2d 58 (Del.1996).

12. *Waters v. State,* 443 A.2d at 504–05 (*citing* the Delaware Criminal Code with Commentary). *See also Hamilton v. State,* 816 A.2d 770, 773–774 (Del.2003) (citations omitted)("Recklessly" is now defined by section 231(e)).

13. Delaware Criminal Code with Commentary, § 635 (1973). The *Commentary* relies

heavily on *State v. Winsett,* 205 A.2d 510 (Del.Super.1964), where the Court stated that, "To constitute murder either of the first or the second degree, the element of malice must be present; without malice there can be no murder, and with malice there can be no manslaughter."

14. *Waters v. State,* 443 A.2d at 505 (*citing State v. Winsett,* 205 A.2d 510, 515–16 (Del. 1964)).

rights and safety of others. Malice, therefore, is a condition of mind or heart, existing at the commission of the fatal act; it includes that general reckless disregard of human life which proceeds from a heart and mind void of a just sense of social duty and fatally bent on mischief. . . .

Implied or constructive malice must be shown by the character of the fatal attack and the surrounding circumstances. Where there is proved no fact or circumstance indicating that the accused acted with a sedate and deliberate mind, yet where the fatal act was unlawful and cruel and voluntarily committed, without adequate provocation, and in circumstances showing a wicked indifference to human life or with a reckless disregard of the consequences, the law implies or infers malice. . . .

Murder in the second degree is where the killing is done, not with express malice, but, rather, with implied or constructive malice, that is, where the malice is inferred from facts actually proved. Malice is implied by law from every intentional cruel act committed by one person against another, however, sudden the act may be. The law considers that he who commits a cruel act voluntarily, does it maliciously. Every person is presumed to contemplate and intend the natural and ordinary consequences of his own voluntary act; if the act, voluntarily and wilfully done, has a direct tendency to destroy the life of another, the natural conclusion from the fact is that the destruction of the person's life was intended.

Murder in the second degree, therefore, is where the killing is done without the premeditation or deliberate mind required to make the act murder in the first degree, but nevertheless is done without justification or excuse, and without adequate provocation, and with a wicked and depraved heart, or with a cruel and wicked indifference to human life. In such case the law implies malice.

The Commentary further explains the State's burden of proof in that regard:

The State will need to prove precisely what the defendant did which supports its contention that his attitude to which supports its contention that his attitude to human life was "cruel, wicked, and depraved." His own words would be relevant, as would his choice of a particular *modus operandi* or a particular weapon. The State must also prove that he was "reckless" with regard to death. That is, he must have perceived and consciously disregarded a substantial and unjustifiable risk that death would be caused by his conduct—a risk that constitutes a "gross deviation" from a reasonable standard of conduct, in the light of all the surrounding circumstances, including the purposes of his activity.[15]

With those concepts of "implied malice" in mind, this Court held in *Waters* that "a cruel, wicked and depraved indifference to human life could be found where the intentional acts (of the defendant) were so fraught with danger [or] so likely to cause death or great bodily harm." [16]

### State's Evidentiary Burden

■ To elevate Manslaughter to Murder in the Second Degree, the State must prove not only that the defendant acted

---

**15.** Delaware Criminal Code with Commentary, § 635 (1974).

**16.** *Waters v. State*, 443 A.2d 500 (Del.1982)(citing *Brinkley v. State*, 233 A.2d 56, 58 (Del.1967)). Accord, *Smith v. State*, 913 A.2d 1197, 1241 n. 102 (Del.2006).

recklessly as defined by 11 *Del. C.* 231(e),[17] but must also prove that the defendant voluntarily and willfully did so under circumstances which demonstrate his conscious and blatant disregard for the rights and safety of others to such a degree that death or serious injury would likely result. To do so, the State's evidence should include all the surrounding circumstances [18] including but not limited to, the defendant's words, the degree of risk inherent in the defendant's activity, and whether he was aware of and blatantly disregarded a known and unjustifiable risk of death.

### State's Evidence

McKinley's own words, in response to a warning from his passenger, demonstrate that his concern for his driving record took precedence over his concern for her life and the lives of others on the roadway. The high degree of risk inherent in McKinley's manner of driving is apparent. Although there is testimony that McKinley "slowed down" to between 88 and 98 miles per hour when approaching intersections controlled by either stop signs or traffic signals, there is no record evidence that indicates McKinley decelerated enough to have any effect on the unjustifiable risk of death that his conduct posed.

The only quantifiable evidence of McKinley's speed at controlled intersec-tions was that presented by the accident reconstruction expert.[19] He testified that when McKinley applied his brakes moments before impact, he was traveling between 93 and 100 miles per hour and at the moment of impact McKinley's speed was between 88 and 98 miles per hour. From that evidence, it is impossible for a rational trier of fact to conclude, as defense counsel argues, that McKinley exhibited concern for others on the roadways.

If anything, that evidence weighs against him because his attempt to reduce his speed demonstrates that he perceived the risk, and yet consciously disregarded it by slowing only to speeds that remained indisputably dangerous. His high rate of speed and reckless driving placed in danger not only his passenger and the pursuing officer, but also the occupants in every car he encountered on the roadway. Thus, the testimony that McKinley "slowed down" to between 88 and 98 miles per hour as he approached a red light supports, rather than rebuts, the State's assertion that he exhibited a "cruel, wicked and depraved indifference to human life."

The State presented evidence of additional acts of recklessness to support a conclusion that McKinley acted with a modus operandi that consciously disregarded a substantial and unjustifiable risk that death would be caused by his conduct.[20]

---

**17.** Del.Code. Ann., tit. 11, § 251(e) states, "A person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."

**18.** Certainly, whether the defendant was under the influence of drugs or alcohol would be included in this analysis, however, as noted above, it is not dispositive of the requisite *mens rea.*

**19.** The record reflects only subjective testimony that McKinley slowed down at intersections from estimated speeds of 100 miles per hour. Moreover, the pursuing police officer noted that he "had [his police vehicle] floored" and yet still had difficulty maintaining visual contact with McKinley's vehicle.

**20.** Delaware Criminal Code with Commentary, § 635 (1973).

Not only was McKinley leading police on a dangerous, high-speed pursuit, but he ignored several controlled intersections. The record indicates that he sped through several stop signs in a residential area and then proceeded to run through at least four red lights. Moreover, at one point, an officer observed McKinley driving on the wrong side of the road and passing several vehicles on the shoulder of the wrong side of the road.

Nevertheless, McKinley argues that the expert testimony he presented regarding his mental limitations [21] demonstrated that he was incapable of forming the state of mind required to exhibit a "cruel, wicked and depraved indifference to human life." To the extent McKinley presented evidence bearing on his individual mental limitations, to negate the requirement that he "perceived" and "consciously disregarded a substantial and unjustifiable risk that death would be caused by his conduct," that evidence constituted a defense, the credibility of which the trial judge was free to accept or reject. Here, there was sufficient evidence in the record for the trial judge to reject the expert's testimony and conclude that McKinley was capable of forming the requisite *mens rea* for Murder in the Second Degree.

### State's Evidence Sufficient

■ The State is able to prove state of mind through direct or circumstantial evidence.[22] Here, the State did both. The State presented direct evidence that McKinley was "aware of" and yet "consciously disregarded" a known risk through the testimony of McKinley's passenger who warned him to "just take the ticket." McKinley consciously disregarded that risk by responding that she should "just put on her seatbelt" because he did "not want to get in trouble." Moreover, the State presented circumstantial evidence of his conscious disregard of an unjustifiable risk of death through testimony relating to the police chase, McKinley's speed, and his persistent disregard of controlled intersections.

Additionally, the State introduced the stipulated agreement between the parties relating to McKinley's prior bad acts. The State was able to present evidence of McKinley's driving record which included thirteen moving violations from nine separate convictions. The trial judge was also able to consider McKinley's license suspensions and the official warnings he had received from both a police and judicial officer as evidence of a "general reckless disregard of human life with a heart and mind void of a just sense of social duty that was fatally bent on mischief." [23]

McKinley has conceded that he acted recklessly. The record reflects that a rational trier of fact, here a trial judge, looking at all the surrounding circumstances of the fatal accident, could have inferred malice by finding that McKinley's actions were fraught with danger and likely to cause death or great bodily harm. The fatal accident was not caused by isolated aberrational conduct.

The record supports a conclusion that McKinley was aware of and blatantly disregarded a known and unjustifiable risk of death to others by his persistent pattern of egregious conduct in trying to avoid apprehension by operating a motor vehicle at an

---

21. Dr. Aaron Finkelstein, a licensed psychologist, testified for the defense that although he did not suffer from ADHD, McKinley did present with "attentional drift." In other words, McKinley had difficulty sustaining focus and he was unable to sufficiently consider past experiences or sufficiently anticipate what would happen next based upon those considerations.

22. *See Burrell v. State,* 766 A.2d 19, 24–25 (Del.2000).

23. *State v. Winsett,* 205 A.2d 510.

outrageously dangerous rate of speed without any regard for multiple stop signs and red lights. The unjustifiable risk of death created by McKinley's reckless actions "constitute[ed] a 'gross deviation' from a reasonable standard of conduct, in light of all the surrounding circumstances, including the purposes of his activity." [24] Accordingly, we hold that the record supports the trial judge's finding that the State had presented sufficient evidence to establish beyond a reasonable doubt the "cruel, wicked and depraved indifference to human life" that was required to convict McKinley of Murder in the Second Degree.

### Conclusion

The judgment of the Superior Court is affirmed.

---

**24.** Delaware Criminal Code with Commentary, § 635 (1973).