IN THE SUPREME COURT OF THE STATE OF DELAWARE

GEORGE SMITH, §
                              §   No. 321, 2025
    Defendant Below, §
    Appellant, §
                              §   Court Below: Superior Court
    v. §   of the State of Delaware
                              §
STATE OF DELAWARE §   Cr. ID. No. 2105010115
                              §
    Appellee. §

Submitted: April 22, 2026
Decided: May 27, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

## <u>**ORDER**</u>

After considering the parties' briefs and the Superior Court record, it appears to the Court that:

(1)    On May 10, 2020, shortly after 12 a.m., George Smith was driving his Dodge Challenger ("the Challenger") in the center lane of Interstate 495 ("I-495") approaching the Christina River Bridge. Before the collision, Smith passed two vehicles whose occupants later testified at trial.[1] Two of the witnesses reported that

---

[1] Two witnesses, Leandra Hoffman and her daughter, Erica Hoffman, were ahead of Smith in the middle lane of I-495 traveling approximately 72 mph. Leandra was driving and Erica was in the front passenger seat. The third witness, Nathan Smith—no relation to Appellant—was traveling on I-495 in the area of Terminal Avenue at approximately 65 to 70 mph.

1

Smith was operating at such a speed that they could hear the Challenger in the distance approaching from behind. The witnesses, who were traveling slightly above the posted speed limit,[2] testified that the Challenger passed them at such a rate of speed that their vehicles shook and it was as if they were standing still.[3] The witnesses reportedly lost sight of the Challenger as it crested the highest part of the Christina River Bridge. As the witnesses went over the bridge, they saw that Smith had struck a Toyota RAV4 farther ahead. The RAV4 was off the roadway and on fire. The driver of the RAV4, Melanie Toto, died as a result of the fire.

(2)     Delaware State Police Corporal David Hudak responded to the scene. Cpl. Hudak discovered the Challenger, with front-end damage, disabled in the middle lane of I-495. Cpl. Hudak found Smith still seated in the driver's seat of the Challenger. Cpl. Hudak did not believe Smith was impaired and testified that he saw no indicia of alcohol or drug use.

(3)     Lieutenant Dermot Alexander of the Delaware State Police Collision Reconstruction Unit was called to the scene to investigate the cause of the fatal crash.[4] Lt. Alexander testified that his investigation revealed that Toto was driving the RAV4 in the center lane of I-495. The Challenger struck the RAV4 from behind

---

[2] The posted speed limit for this portion of I-495 is 65 mph.

[3] Smith does not contest that he was "driving at an incredibly high rate of speed." *See* Appellant's Corrected Opening Br. at 5.

[4] Lieutenant Alexander held the rank of Sergeant at the time of the crash.

2

in a direct, inline, rear-end collision. The Challenger finally stopped approximately 1,200 feet from the point of impact. The impact caused the RAV4 to leave the center lane, travel off the roadway to the right, and go down an embankment. After the RAV4 left the roadway, it flipped and ultimately stopped upright facing oncoming traffic. After the collision, the RAV4 caught fire with Toto still inside. Toto was pronounced dead at the scene. An autopsy showed that the fire and resulting burns caused Toto's death.[5]

(4) Lt. Alexander testified that his investigation included recovering data from the Challenger's Airbag Control Module (ACM).[6] ACM data includes information like vehicle speed, whether the driver applied the brakes or tried to steer the vehicle before the event, whether an occupant was wearing their seatbelt, and whether the airbags deployed.[7] Lt. Alexander testified that the Challenger's ACM showed that Smith was traveling at approximately 154 mph at the time of the crash, with a margin of error of plus or minus 5 mph. The posted speed limit for that area of I-495 is 65 mph. The ACM data showed that Smith had the accelerator pedal pushed to 100 percent at the time of impact, and that he did not use the brakes before

---

[5] App. to Appellee's Answering Br. at B43 (Dec. 3, 2024 Trial Tr.).

[6] The ACM captures pertinent data for a vehicle's airbag system and includes the five seconds that precede an event or crash. The ACM is also referred to as an Event Data Recorder ("EDR") or sometimes as a vehicle's "black box." *See id*. at B25 (Dec. 3, 2024 Trial Tr.).

[7] *Id.* (Dec. 3, 2024 Trial Tr.).

the crash. Lt. Alexander applied the ACM data to velocity formulas used for crash reconstruction and determined that Toto was traveling approximately 68.64 mph when the Challenger struck the RAV4 from behind.[8]

(5) Lt. Alexander ruled out other potential causes and concluded that the crash and Toto's resulting death were attributable solely to Smith traveling at an extreme rate of speed and failing to take any evasive action. On May 24, 2021, a grand jury indicted Smith for Murder Second Degree, Reckless Endangering First Degree, Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), and Speeding. After a trial, the jury convicted Smith of all the charges. The Superior Court sentenced Smith to 40 years in prison, suspended after 17 years for probation.

(6) Smith raises three claims on appeal: (1) the Superior Court abused its discretion by excluding a statement that Smith made to Lt. Alexander several days after the accident; (2) the jury instructions for second-degree murder were confusing; and (3) the court's response to the jury's request for a clearer definition of the word "malicious" was inadequate. On May 21, 2026, Smith's counsel filed a letter with the Court seeking permission to raise a new claim of error. That request is denied; an argument not raised in the opening brief is deemed waived.[9]

---

[8] *Id.* at B100 (Dec. 4, 2024 Trial Tr.).

[9] *See* Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").

(7) "This Court reviews 'a trial court's decision on the admissibility of evidence under an abuse of discretion standard.'"[10] An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice as to produce an injustice.[11] Smith argues that the trial court abused its discretion by excluding a statement of remorse that he made to Lt. Alexander.[12] According to the record, several days after the crash, Smith encountered Lt. Alexander at the tow yard where Smith's Challenger was stored. After seeing his damaged vehicle, Smith allegedly made a comment to Lt. Alexander, asking whether God would forgive him.

(8) During Lt. Alexander's cross examination, Smith's counsel sought to question Lt. Alexander about whether Smith said anything to him at the tow yard. The State objected on the basis of hearsay. At sidebar, defense counsel argued that

---

*See also Small v. State*, 106 A.3d 1050, 2015 WL 71631, at *2 (Del. 2015) (TABLE) (explaining that new arguments raised in revised opening brief submitted after deadline would not be considered by the Court); *Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242 ("the appealing party's opening brief must *fully* state the grounds for appeal, as well as the arguments and supporting authorities on each issue or claim of reversible error. '[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue for appeal[,]' and *a fortiori* no specific mention of a legal issue is insufficient.") (citation omitted) (italics in original).

[10] *Harris v. State*, 301 A.3d 1175, 1180 (Del. 2023) (quoting *Hines v. State*, 248 A.3d 92, 99 (Del. 2021) (citing *Rivers v. State*, 183 A.3d 1240, 1243 (Del. 2018))).

[11] *Harper v. State*, 970 A.2d 199, 201 (Del. 2009) (quoting *Culp v. State*, 766 A.2d 486, 489 (Del. 2001)).

[12] At trial, Smith responded to the State's hearsay objection by citing exceptions to the hearsay rule. *See* App. to Appellee's Answering Br. at B151–52 (Dec. 4, 2024 Trial Tr.). In this appeal, Smith has argued that the statements are not hearsay and "[i]t was not a statement of fact or opinion offered to prove a fact that was relevant in the proceedings." Appellant's Corrected Opening Br. at 20. Because we conclude that the evidence is not relevant, we do not reach the hearsay issue.

5

Smith's statement was admissible under Delaware Rules of Evidence ("D.R.E.") 803(3)[13] or 803(1).[14] The court held that Smith's statement was not admissible under a hearsay exception and was not relevant to Smith's state of mind since it was made days after the crash.[15]

(9)  A central issue at trial was the jury's assessment of Smith's state of mind at the time of the crash.[16] To establish his state of mind, the Superior Court allowed Smith to introduce recordings of three statements that he made to officers at the scene of the crash.  The recordings captured Smith questioning officers about whether anyone was hurt and stating that he did not "want to hurt somebody, man."[17] In contrast, the court excluded Smith's expression of remorse made several days after the crash.

(10)  The Superior Court did not abuse its discretion in excluding Smith's out-of-court statement.  "Evidence must be relevant to be admissible at trial[,]"[18] and evidence is relevant only if it has any tendency to make a fact of consequence—here,

---

[13] D.R.E. 803(3) (Then Existing Mental, Emotional, or Physical Condition).

[14] D.R.E. 803(1) (Present Sense Impression).

[15] App. to Appellee's Answering Br. at B152 (Dec. 4, 2024 Trial Tr.).

[16] *See McKinley v. State*, 945 A.2d 1158, 1161 (Del. 2008) (holding that the requisite state of mind for second-degree murder is "intended to define a particular state of mind which must be found to have existed in the defendant *at the time* the crime was committed-the *mens rea*.") (emphasis added) (quoting *Waters v. State*, 443 A.2d 500, 504 (Del. 1982)).

[17] *See* App. to Appellee's Answering Br. at B48–49 (Dec. 3, 2024 Trial Tr.).

[18] *Watkins v. State*, 23 A.3d 151, 155 (Del. 2011) (citing *Stickel v. State*, 975 A.2d 780, 782 (Del. 2009) (citing D.R.E. 402)).

Smith's *mens rea* at the time of the crash—more or less probable.[19] Although the Superior Court has admitted post-offense statements on some occasions, it has limited that evidence to matters that bear a logical and non-speculative connection to the defendant's mental state at the time of the offense or that allow the jury to assess the defendant's credibility.[20] Smith's excluded statement was retrospective, not connected to his actions before the crash, and would require the jury to impermissibly speculate about his mental state at the time of this crash.[21] Smith's recounting or reaction to past events after several days is not probative of his state

---

[19] *See* D.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). *Hignutt v. State*, 958 A.2d 863, 867 (Del. 2008) ("The decision whether to admit testimony as relevant under D.R.E. 402 is within the sound discretion of the trial judge.") (citing D.R.E. 402 and *Lampkins v. State*, 465 A.2d 785, 789–90 (Del. 1983)).

[20] *See State v. Robinson*, 2025 WL 3081856, at *1–3 (Del. Super. Nov 4, 2025) (holding that a hospitalized driver's statement the day after the fatal crash—"I don't give a [. . .] about dem people"—was relevant to his *mens rea* at the time of the collision because it showed "their capability of similar indifference shortly after" the offense); *see also State v. Ford*, 293 A.3d 372 (Del. Super. 2023) (holding that the jury was permitted to assess defendant's credibility through testimony that was partially inculpatory—specifically, "that he: (1) called his mother to say he was in a bad crash and cried on the call; (2) asked about the condition of the other driver at the hospital; (3) cried, again, when Corporal Breen informed him of Mr. Milton's death; (4) completely cooperated with police and waived *Miranda*; (5) implicated himself in the crime of smoking marijuana without a marijuana card; and (6) consented to a blood draw, despite admittedly smoking CBD earlier in the day"), *aff'd*, *Ford v. State*, 341 A.3d 454 (Del. 2025).

[21] See *Farmer v. State*, 698 A.2d 946, 948 (Del. 1997) (holding that relevant evidence should "advance the likelihood of the fact asserted") (citing *Getz v. State*, 538 A.2d 726, 731 (Del. 1988)).

7

of mind during the accident, and the statement's exclusion was not an abuse of discretion.[22]

(11)  Smith's other two claims on appeal relate to the jury instructions, but he did not raise either argument in the Superior Court. When a defendant fails to properly preserve an objection to jury instructions, we apply plain-error review.[23] Plain error requires the defendant to "show that (1) the record is adequate to review his claim, (2) an error occurred, (3) the error is plain, and (4) the error adversely affected his substantial rights by jeopardizing the fairness and integrity of the trial process."[24] We have held that a trial judge's instruction will not constitute plain error if "it is 'reasonably informative and not misleading, judged by common practices and standards of verbal communications.'"[25] In making this assessment, we must review the instruction as a whole.[26]

---

[22] The record is not clear on when the tow-yard conversation occurred. According to Smith, the conversation happened on May 15, 2020, five days after the crash. *See* App. to Appellee's Answering Br. at B151 ("Mr. Smith and his mother went to the tow yard, I think it was the 15th.").

[23] *See Lowther v. State*, 104 A.3d 840, 845 (Del. 2014) (citing *Kostyshyn v. State*, 51 A.3d 416, 419 (Del. 2012) (citing *Probst v. State*, 547 A.2d 114,119 (Del. 1988))). Smith conceded that plain-error review applies to this claim but then argued for *de novo* review. Smith offered no authority supporting application of a *de novo* standard. *See* Appellant's Corrected Opening Br. at 13–14.

[24] *Suber v. State*, __ A.3d __, 2026 WL 184867, at *6 (Del. Jan. 15, 2026).

[25] *Lowther*, 104 A.3d at 846 (citing *Hankins v. State*, 976 A.2d 839, 841 (Del. 2009) (quoting *Flamer v. State*, 490 A.2d 104 (Del. 1983))).

[26] *Lowther,* 104 A.3d at 847 (citing *McNally v. State*, 980 A.2d 364, 367 (Del. 2009) (citing *Floray v. State*, 720 A.2d 1132, 1138 (Del. 1998))).

(12)    At the conclusion of trial, the court instructed the jury on the charge of Murder in the Second Degree as follows:

> In order to find the Defendant guilty of Murder in the Second Degree, you must find that the State has proved the following three elements beyond a reasonable doubt: 1) the Defendant caused a person's death; 2) the Defendant acted recklessly in causing the death; and 3) that the Defendant caused the death under circumstances which manifest a cruel, wicked[,] and depraved indifference to human life.[27]

The court explained that "Recklessly" is a defined term in the criminal code and provided the statutory definition.[28]  The court further instructed the jury that:

> The terms cruel, wicked[,] and depraved indifference to human life are statutory terms used in definitions of Murder in the Second Degree, but the words are not defined in the Criminal Code.  Therefore, these words are given their commonly accepted meaning.
>
> "Cruel" describes the *malicious* infliction of physical suffering upon a human being.
>
> "Wicked" describes a lack of conscience or morality.
>
> "Depraved" describes an indifference for human life.[29]

(13)    During deliberations, the jury sent a note to the court and asked: "Can we have a definition for the term ['malicious']?"[30]  In response, the court provided

---

[27] App. to Appellee's Answering Br. at B237 (Dec. 5, 2024 Trial Tr.).

[28] *Id.* at B237–38 (Dec. 5, 2024 Trial Tr.).

[29] *Id.* at B238 (Dec. 5, 2024 Trial Tr.) (emphasis added).

[30] *Id.* at B247 (Dec. 6, 2024 Trial Tr.).

9

three dictionary definitions for "malicious." Smith agreed with this supplemental instruction and the three definitions offered.[31]

(14) The jury later presented two further questions to the court. The Superior Court conferred with the State and defense counsel, and all parties agreed to the court's proposed responses. First, the jury asked: "Can you clarify if we are focused on the action, the mindset, or both when we are looking at the definition for ['cruel'] under the charge for Second Degree Murder?"[32] The court informed the jury that it would not provide additional instruction and referred the jury to the language of the original instruction. Second, the jury asked: "Can we have one concise definition for malicious? The current definitions provided already conflict with one another and cause more confusion."[33] In response, the Superior Court told the jury that it was to rely on the commonly accepted meaning of the word. Further, the court explained that if the previously supplied dictionary definitions of "malicious" caused any confusion, it was up to the jury to agree on a definition and determine if the facts fit that definition.

(15) Smith raises two appellate claims relating to this series of instructions: he contends that the Superior Court's definition of "cruel" did not fit the facts of his

---

[31] *Id.* at B252 (Dec. 6, 2024 Trial Tr.).

[32] *Id*. at B253 (Dec. 6, 2024 Trial Tr.).

[33] *Id.* (Dec. 6, 2024 Trial Tr.).

10

case and confused the jury, and he argues that the supplemental instructions regarding the meaning of "malicious" were inadequate.

(16)   First, we detect no plain error in the Superior Court's definition of the term cruel.  The court explained to the jury that "'[c]ruel' describes the malicious infliction of physical suffering upon a human being."[34]  Smith, however, believes that Toto did not suffer because her death was instantaneous, and the Superior Court should have confined the jury's understanding of "cruel" by not including "physical suffering" within the definition.[35]

(17)   Jury instructions are reviewed in their entirety, need not "be perfect, and may be deemed adequate 'if they allow a jury to intelligently perform its duty in returning a verdict.'"[36]  Read as a whole, the jury instruction and definition of "cruel" accurately defined the state-of-mind element of second-degree murder.  Although difficult to parse, Smith's argument is grounded in his mistaken belief that Toto was required to experience physical suffering to satisfy this element.  But the terms cruel, wicked, and depraved describe the heightened mental state of the defendant at the time the crime was committed.[37]  In this context, "cruel" is

---

[34] *Id.* at B238 (Dec. 5, 2024 Trial Tr.).

[35] We note that the record does not, as Smith suggests, support a conclusion that Toto died instantaneously.  App. to Appellee's Answering Br. at B43 (Dec. 3, 2024 Trial Tr.).

[36] *Mills v. State*, 201 A.3d 1163, 1179 (Del. 2019) (quoting *Flamer*, 490 A.2d at 128).

[37] *See McKinley*, 945 A.2d at 1161 ("'[T]he words "cruel, wicked and depraved indifference to human life" are intended to define a particular state of mind . . . .'") (quoting *Waters*, 443 A.2d at 504); *see also Ford*, 341 A.3d at 464 (explaining that the "cruel, wicked and depraved indifference

11

connected to Smith's culpable "indifference to human life"—his *mens rea*—rather than the consequence of his actions. In contrast, the first element of second-degree murder relates to the outcome of Smith's actions and requires that have he "caused a person's death."[38] The jury instruction was an accurate statement of law and correctly directed the jury to use the commonly accepted definition of "cruel" to focus on Smith's *mens rea* at the time of the crime. No plain error occurred.

(18) Smith also contends that the Superior Court erred when it declined to further define the word "malicious" after the jury sought clarification during deliberations.[39] The word "malicious" appeared in the court's definition of the word "cruel." In response to questions from the jury, the Superior Court—with the

---

[to human life]" requirement is connected to common law "malice," which the State can prove "'where the intentional acts (of the defendant) were so fraught with danger [or] so likely to cause death or great bodily harm.'") (quoting *McKinley*, 945 A.2d at 1163)).

[38] App. to Appellee's Answering Br. at B237 (Dec. 5, 2024 Trial Tr.). Contributing to the confusing nature of this claim on appeal, Smith relied on the court's definition of "cruel" in his closing at trial, arguing that the jury was to rely on the "common definition" of cruel but that Smith's driving did not "satisf[y] the cruelness definition." *Id*. at B230 (Dec. 5, 2024 Trial Tr.).

[39] Smith is limited to plain-error review on this issue, to the extent it was not waived by Smith's agreement on the record. After the jury returned to deliberate, Smith made an unsupported objection to the agreed-upon wording used to answer the jury's second question. Smith made no other objections relating to the court's definition of "malicious," and did not object to the court's decision to instruct the jury to decide its meaning. App. to Appellee's Answering Br. at B270—71 (Dec. 6, 2024 Trial Tr.); *see also* B269 (Dec. 6, 2024 Trial Tr.). The objection that Smith raised in the Superior Court is not raised in this appeal. *See Hastings v. State*, 289 A.3d 1264, 1269–70 (Del. 2023) (finding under Del. Super. Crim. R. 30, "'[n]o party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before or at a time set by the court immediately after the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.' The purpose of the rule is to alert the trial judge to an objection and to provide the court with a chance to address the objection before the jury deliberates.") (citing *Jones v. United States*, 527 U.S. 373, 388 (1999)).

12

parties' agreement—offered three dictionary definitions and later instructed the jury to choose a single definition on which they all agreed. The court told the jury to "decide whether and to what extent these facts fit within some definition of malicious that you can all agree upon."[40]

(19) Smith's point on appeal is attenuated. The word "malicious" is not itself an element of the offense. The Superior Court properly treated "malicious" as an ordinary adjective rather than a technical legal concept, concluding that a specialized definition was unnecessary and would risk confusing the jury about the required culpability. The court reasonably decided to instruct the jury to agree upon a definition and determine if the facts fit within that definition. This approach guided the jury to unanimously decide based on their shared, accepted understanding of the term.

(20) "'[J]ury instructions must be viewed as a whole.'"[41] Reversal is warranted only if a "deficiency undermined the ability of the jury 'to intelligently perform its duty in returning a verdict.'"[42] The question is whether the instructions, viewed in their entirety, "correctly stated the law and enabled the jury to perform its

---

[40] App. to Appellee's Answering Br. at B268–69 (Dec. 6, 2024 Trial Tr.).

[41] *Jones v. State*, 227 A.3d 1097, 2020 WL 1845887, at *5 (Del. Apr. 13, 2020) (TABLE) (quoting *Probst*, 547 A.2d at 119).

[42] *Jones*, 2020 WL 1845887, at *5 (quoting *Probst*, 547 A.2d at 119). *But see Waters*, 443 A.2d at 506 (holding that the failure to provide definitional guidance was reversible error because the court merely read the statute and offered no definition of key terms, including differentiating "reckless" and the meaning of "cruel, wicked and depraved indifference to human life").

13

duty."[43] The record demonstrates that the Superior Court exercised appropriate discretion in responding to the jury's questions. At each stage, the court consulted with counsel before responding to the jury's notes. Smith not only failed to object to the court's approach but affirmatively agreed with it.[44]

(21) Smith's brief takes issue with two other words in the second-degree murder instruction. Smith asserts that the court did not define "reckless" to the jury. The Superior Court, however, explained to the jury that "recklessly" is a defined term in the code and provided the jury its statutory meaning.[45] Smith also argues that the Superior Court should have defined "willfully" in its instruction on second-degree murder.[46] Smith cannot show plain error where the jury was allowed to rely on their commonly accepted definition of "willfully," which is not defined in the code. Smith neither objected to this instruction nor asked the court to define the

---

[43] *Ford*, 341 A.3d at 465–66 (upholding the trial court's use of pattern instructions defining depraved indifference, noting that the court acted within its discretion in using established definitions rather than defendant's proposed alternative language) (quoting *Corbitt v. Tatagari*, 804 A.2d 1057, 1062 (Del. 2002)).

[44] Smith agreed with the Superior Court's answer to the jury's first note. *See* App. to Appellee's Answering Br. at B252 (Dec. 6, 2024 Trial Tr.) ("I developed a list of dictionary definitions for malicious . . . and the three that you used were on that list. So I am perfectly in agreement, and I said let's do that."). Smith's objection to the court's response to the second note was not directed to the issue he raises on appeal. *See id*. at B270–71 (Dec. 6, 2024 Trial Tr.).

[45] *Id.* at B237–38 (Dec. 5, 2024 Trial Tr.).

[46] *Id*. at B237 ("In order to prove Murder in the Second Degree, the State must prove not only that the Defendant acted recklessly, but must also prove that the Defendant voluntarily and *willfully* did so under circumstances which demonstrate conscious and blatant disregard for the rights and safety of others to such a degree that death will likely result.") (emphasis added).

14

term.  The jury instruction was not confusing or misleading and properly allowed the jury to rely on the term's common usage.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice