Harold GOODRIDGE and Stephanie
Goodridge, Plaintiffs Below,
Appellants.

v.

HYSTER COMPANY, NAACO Material
Handling Group, Inc., Defendants
Below, Appellees.

No. 268,2003.

Supreme Court of Delaware.

Submitted: Dec. 16, 2003.
Decided: April 2, 2004.

Gary W. Aber, Aber, Goldlust, Baker & Over, Wilmington, for appellant.

David E. Moore, Potter Anderson & Corroon, Wilmington, Dennis P. Ziemba (argued), Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, pro hac vice, for appellees.

Before VEASEY, Chief Justice, HOLLAND, STEELE, JACOBS, and HARTNETT.

STEELE, Justice:

The plaintiffs, Harold and Stephanie Goodridge sued Hyster Company, NACCO Materials Handling Group, Inc., Modern Group, Ltd. and Modern Handling Equipment Co. to recover damages resulting from an injury sustained in a forklift accident at Harold's workplace.[1] Defendants successfully moved *in limine* to bar the expert testimony of plaintiffs' only identified expert witness. The trial judge ruled that the expert was not qualified to offer an opinion about forklift design and that his proffered testimony would not assist the jury in any meaningful way. We agree and affirm.

### I

On January 21, 1998, Harold Goodridge was injured while working as an employee of the Port of Wilmington. The accident occurred when a co-employee operating a forklift backed around a corner and ran over Goodridge's leg. The forklift was not equipped with any automatic back-up alarm or warning light.

The forklift was designed, manufactured, and marketed by Defendants Hyster and NACCO. Defendant Modern purchased the forklift and leased it to the Port in 1988. The Port purchased the forklift from Modern on July 1, 1993. Goodridge sued Hyster, NACCO and Mod-

---

1. Plaintiffs later settled their claims against Modern Group, Ltd. and Modern Handling Equipment Co.

ern alleging, *inter alia,* that these entities negligently designed, manufactured, and supplied a forklift to the Port of Wilmington without a back-up warning device.

Plaintiff's expert, Vincent A. Gallagher, Jr., is a Certified Hazard Control Manager, Master Level I. He received an M.A. degree from The Center for Safety at New York University and currently does consulting work for labor organizations and industry with a concentration on safety consulting. Previously, OSHA employed Gallagher as a safety inspector for all but three years from April 1972 through November 1985.

While with OSHA, Gallagher visited approximately eight hundred work places. Five hundred of these were manufacturing operations that contained hundreds of industrial products. He evaluated more than ten thousand products over the years and investigated more than five hundred fatal accidents. In addition, several organizations have used Gallagher's services to identify hazards and develop documents to assist engineers considering safety in their designs. The Journal of the American Society of Safety Engineers, *"Professional Safety,"* has accepted one of Gallagher's articles for publication.

## II

Gallagher would have testified that safety organizations, such as the National Institute of Occupational Safety and Health ("NIOSH") and The National Safety Council ("NSC") recognize the value of backing-up alarms on forklift trucks and recommend that forklifts used in storage areas be equipped with backing-up alarms. Gallagher would also have opined that: (1) Hyster violated prudent safety management under the NSC's standards by failing to equip the forklift with "state-of-the-art" backing-up alarms, strobe lights and rearview mirrors; (2) Hyster failed to perform effective hazard identification, evaluation and selection of the most reliable controls to protect pedestrians; and, (3) Hyster violated NSC-established criteria concerning the design of effective warnings on industrial equipment. Gallagher would ultimately conclude that Hyster's forklift was unreasonably dangerous and defective because it lacked fundamental safety devices and that omission proximately caused Goodridge's injury.

Gallagher conceded, however, that Hyster's forklift complied with all OSHA regulations.[2] Further, Gallagher acknowledged that Hyster's forklift did not violate the safety standards of the American Society of Mechanical Engineers ("ASME")[3] or the American National Standards Institute ("ANSI")[4].

## III

The trial judge found that, "The gist of Gallagher's opinion is that every forklift designed and manufactured without safety features is defective and unsafe, regardless of how it is used in the field."[5] He cited two fundamental shortcomings under Del.

2. Gallagher concedes that OSHA regulations do not require automatic audible alarms, backing-up-up alarms, flashing or strobe lights, nor rear view mirrors on forklifts.

3. The American Society of Mechanical Engineers is a national organization that coordinates the development of design and national safety standards for forklifts. An ASME Committee specifically promulgated the national consensus standards applicable to the design, use and operation of forklifts.

4. The American National Standards Institute is a national organization that approves the ASME standards.

5. *Goodridge v. Hyster Co.,* 2002 WL 32007200, at \*1 (Del.Super.Ct. Oct. 4. 2002).

R. Evid. 702 [6] that rendered Gallagher's proffer inadmissible:

First, by his own admission, Gallagher is not qualified to offer an opinion about forklift design. He is not a forklift designer, nor is he even an engineer. At best, Gallagher theoretically might offer the opinion that under the circumstances in which the forklift was used by the Port, the forklift should have been equipped with backing-up safety features. It does not appear, however, that Gallagher actually is qualified to offer that opinion. But even that opinion leaves open the question as to whether the forklift design was negligent, which is the issue and the reason Gallagher's opinion is preferred. Along the same lines, Gallagher's opinion is based simply on his culling potentially favorable snippets from various safety publications. Coupling that with Gallagher's general background as a safety expert does not amount to an acceptable expert opinion under Rule 702. Gallagher is not qualified based on his general experience and his review of several safety publications to opine that all forklifts, including Hyster's product, need backing-up safety features.

The second reason why Gallagher's proposed testimony falls short under *Daubert* and *Bell* is that it will not assist the jury meaningfully. To be sure, without Gallagher's testimony the jury will not know about NSC's and NIOSH's publications and he could tell the jury about them. To be meaningful, however, it is not enough simply to tell the jury about those publications and then leave the jury to its own devices. Without a qualified expert's testimony putting the literature into context, the jury will have to speculate in order to apply the literature to this case's facts.[7]

The trial judge found Gallagher's article in *Professional Safety* "unimpressive," explaining that the article tends to highlight how Gallagher's opinions would not be helpful to a jury because it amounts to a plea to safety professionals and organizations to consider new standards:

When he is not presenting horrors about mothers, infants and workers being injured for unexplained reasons in backing-up-up accidents, Gallagher presents various safety experts' recommendations that equipment, such as forklifts, should be equipped with backing-up-up alarm...After arguing in detail why OSHA, NHTA and ANSI are wrong for not mandating backing-up safety equipment, Gallagher calls on safety professionals to "advocate the use of backup alarms...." He concludes: "Hopefully someday, we will look back on this safety failure as we now look back on automobiles without seat belts and air bags, construction workers without hard hats, homes without smoke detectors, etc., etc." [8]

The trial judge characterized Gallagher's proffer as an improper attempt to move the debate over the need for new forklift safety standards into a Delaware jury room. The trial judge concluded that:

**6.** Rule 702. Testimony by experts. If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**7.** 2002 WL 32007200 at *4

**8.** *Id.* at *4–*5.

This case concerns a particular forklift, the way it was operated, and the way that a particular worker at the Port of Wilmington was injured by it. Bringing in Gallagher's opinion, which reflects his bias rather than scientific engineering, can only distract the jury from the real issues in this case." [9]

## IV

Goodridge claims that the trial judge erred by failing to consider fully Gallagher's opinions and methodology before ruling that he lacked "specialized knowledge" that would assist the jury to understand the factual dispute about whether Hyster breached its duty of care by designing, manufacturing and marketing a forklift without a backing-up warning device. They insist that Gallagher's expertise in "the principles and practices of hazard control and 'Product Safety Management'" suffice to qualify him as an expert and make his proffer reliable.

Hyster responds that Gallagher is a "professional witness" with no expertise in engineering or forklift design. Therefore, Hyster maintains, Gallagher has no reliable "specialized" knowledge about whether Hyster negligently designed, manufactured, assembled, or marketed the H60XL forklift or that the resulting defect proximately caused Goodridge's injury. Hyster underscores that Gallagher admits he is not an expert on forklift design and has, in fact, been found unqualified under *Daubert* [10] and *Kumho* [11] to testify about forklift design in two separate factually and analytically apposite Federal cases. [12]

---

9. *Id.* at *5.

10. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

11. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

12. See *Pearson v. Young*, 2002 U.S. Dist. LEXIS 26263 (W.D.Okla. Feb. 5, 2002) One of plaintiff's two expert witnesses on the liability issues was Vincent A. Gallagher, Jr., of Audubon, New Jersey. The court said of him:

Mr. Gallagher is, to put it mildly, an experienced expert witness. The record establishes that nearly one hundred percent of Mr. Gallagher's livelihood consists of earnings derived from his services as an expert witness.
\*\*\*\*

Having considered all of the parties' submissions, together with Mr. Gallagher's live testimony, the court is strongly tempted to find that Mr. Gallagher knowingly made the untrue statement that his testimony had never been excluded under *Daubert*. The suggestion that Mr. Gallagher's engagement in the West Virginia case ran its course to its futile conclusion without Mr. Gallagher having been informed that the exclusion was based on *Daubert* strains credulity.

See also *Payne v. NAACO Materials Handling Group*, Civ. No. 3:98–0385 (S.D.W.V. July 23, 1999) The plaintiff asserted that Mr. Gallagher was qualified to provide expert testimony that the forklift should have been equipped with these safety devices and that, without these devices, the forklift was not reasonably safe for its intended use. Senior Judge Robert J. Staker commented:

Mr. Gallagher has pointed to no statute, OSHA regulation, or other industry practice whatsoever that requires or even recommends that forklifts be equipped with either an audible signal that is actuated when it backs up or with one or more rearview mirrors. So there is no—it's just his own personal opinion that they ought to be so equipped, and that failure so to equip them renders those forklifts to be unreasonably dangerous for their intended use. So he has not satisfied any of the indicia set forth in *Daubert* to bolster his opinion.
\*\*\*\*

And it would thus be improper to permit a so-called expert witness to testify that the failure of a manufacturer of the forklift in question to equip that forklift with an audible signal that sounded when it was backing up and/or one or more rearview mirrors was the proximate cause of plaintiff's injury without taking into consideration all of the other surrounding circumstances and fac-

## V

We review a trial judge's decision to admit or exclude expert testimony for an abuse of discretion. We apply this standard to a trial judge's ruling on either the reliability of an expert's methodology or the reliability of an expert's ultimate conclusion.[13] A witness may testify as an expert when qualified as an expert and the trial judge determines that the witness has scientific, technical or other specialized knowledge that will assist the finder of fact in understanding evidence or in determining a fact at issue.[14]

This Court has adopted a five-step test to determine the admissibility of scientific or technical expert testimony:

The trial court must decide that: (i) the witness is 'qualified as an expert by knowledge, skill experience, training or education' ...; (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information 'reasonably relied upon by experts in the particular field' ...; (iv) the expert testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue' ...; and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[15]

The trial judge's inquiry should include whether the proffered expert and the purported "field of expertise" itself can produce an opinion that is sufficiently informed, testable and, in fact, verifiable on an issue to be determined at trial.[16] Even though an expert may be qualified to opine within a recognized "field," that fact alone does not automatically guarantee reliable, and therefore admissible, testimony.[17] It is critical that a trial judge be satisfied that any *generalized* conclusions are applicable to the *particular* facts of the case.[18]

## VI

We are satisfied that the trial judge, after conducting a thorough hearing and considering the voluminous written submissions, acted appropriately within his discretion by excluding Gallagher's proffered testimony. It is evident from a review of the record that the trial judge took great care to "gauge the competing positions of the parties concerning the expertise of the proposed witnesses, their familiarity with the underlying scientific principles and the relevance of their opinion to the disputed issues."[19]

Here, the trial judge correctly identified the analytical disconnect between Gallagher's experience in occupational safety and his ability to give a reliable opinion about whether an injury was caused by an

---

tors that bear upon the determination of proximate cause in this case or in any other case. So he will not be permitted to testify as to proximate cause ...

13. *Price v. Blood Bank of Delaware, Inc.,* 790 A.2d 1203 (Del.2002); *M.G. Bancorporation v. Le Beau,* 737 A.2d 513 (Del.1999).

14. *Eskin v. Carden,* 2004 WL 300426 at **3, 2004 Del. Lexis 81 at *7 (Feb. 13, 2004); Del. R. Evid. 702.

15. *Id.* at **3, 2004 Del. Lexis 81 at *8 (citing *Cunningham v. McDonald,* 689 A.2d 1190, 1193 (Del.1997)).

16. *Id.*

17. *Id.*

18. 2004 WL 300426, 2004 Del. Lexis 81 citing *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir.1985). ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

19. *Bell Sports, Inc. v. Yarusso,* 759 A.2d 582, 590 (Del.Super.Ct.2000) .

unreasonably dangerous and defective forklift. The record further reveals a dearth of intellectual rigor by Gallagher in forming his opinion,[20] evidenced by the following exchange during Gallagher's deposition:

Q: (by Mr. Ricci) My question was: Have you personally conducted a single scientific test on the effectiveness of such alarms in preventing pedestrian accidents in any application or operating environment?

A: (by Mr. Gallagher) Well, that's science. I stand there, I hear the forklift truck and I hear the back-up alarm... That's an empirical study that I have performed thousands of times, that back up alarms warn people...

Q: So it is your testimony that you have conducted a scientific test on the effectiveness of back-up alarms?

A: I just answered the question. I did an empirical study many, many times...

Q: But when you said you did empirical studies, is it your testimony that your empirical studies were in fact scientific tests?

A: Sure. It's as fundamental as you get. I was there. I had ears. I could hear it. It was in close proximity to me, in the same place where the workers would be. That meets all the criteria for tests in a scientific way.

Q: Have you documented any of these tests?

A: No. I just expressed them here today.

An intellectually rigorous opinion generally warrants that a witness has taken care to avoid misrepresentations to the court, especially those involving matters of objective, concrete fact.[21] Gallagher has taken no engineering or machine design courses and is not a degreed engineer in any field or discipline, including safety design. He has never compiled data nor conducted studies regarding the effectiveness of alarms, devices or mirrors in preventing forklift-pedestrian accidents at the Port of Wilmington or any other location. Gallagher did not visit the scene of Goodridge's accident and did not inspect the particular Hyster forklift involved in the accident. Further, the record indicates, he has never operated a forklift, and he was uncertain whether he had even ever seen the type of Hyster forklift involved in the accident. The trial judge found that Gallagher "lacks the educational background as well as the design experience to expound on the issue of design defect in a way that makes him an expert within the meaning of DRE 702."[22] We agree. The record establishes that Gallagher was unqualified to provide a relevant or reliable opinion about Hyster's liability for the particular accident in question. The trial judge correctly granted the Motion *in Limine*.

## Conclusion

Based on the foregoing, we AFFIRM the decision of the Superior Court.

It is ordered that the time within which a motion for reargument may be timely filed under Supreme Court Rule 18 is shortened to five days from the date of this Opinion. This Order is due to the impending change in the composition of

---

20. See *Kumho*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (suggesting that a judge should look, in an expert opinion, for the same intellectual rigor used by other experts in the relevant field).

21. *Id.*; See also *Pearson v. Young*, 2002 U.S. Dist. Lexis 26263 (finding specifically that an Gallagher's opinion is void of intellectual rigor because he clearly fails to avoid misrepresentations of objective facts).

22. *Goodridge*, 2002 WL 32007200 at *2.

the Supreme Court, arising out of the retirement of the Chief Justice in April 2004.