Troy McNALLY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 183, 2008.

Supreme Court of Delaware.

Submitted: May 21, 2009.
Decided: Aug. 18, 2009.
Amended: Sept. 28, 2009.

Kevin M. Howard, Young, Malmberg & Howard, P.A., Dover, DE, for appellant.

John Williams, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices and NICHOLAS, Judge* constituting the court en banc.

* Sitting by designation pursuant to Del. Const. Art. IV § 12.

STEELE, Chief Justice:

Troy McNally appeals his conviction in the Superior Court of Reckless Endangering First degree (4 counts), Possession of a Firearm During the Commission of a Felony (4 counts), and Criminal Mischief (1 count). McNally challenges the trial judge's jury instruction on reasonable doubt; the trial judge's decision to permit the State's ballistic expert to testify alleging that so doing violated McNally's right to confrontation and D.R.E. 702; and the trial judge's exercise of discretion by admitting gunshot residue (GSR) evidence when a chain of custody witness did not testify. Because the trial judge did not abuse his discretion or commit plain error, we **AFFIRM.**

## FACTS

On the night of January 6, 2007, someone shot four .45 caliber bullets in the direction of 82 Strawberry Drive, Magnolia, Delaware. Stacey Smith was visiting her mother at 102 Strawberry Drive, the house next door. Smith and McNally dated in the past, and they have two children together. One bullet struck Smith's car. The other three bullets struck the house at 82 Strawberry Drive. Four people were inside 82 Strawberry Drive that night. From 102 Strawberry Drive, Smith and her mother heard a loud noise. They went outside and found a bullet hole in the left front fender of Smith's car. In a 911 telephone call, Smith identified McNally as the shooter and claimed that he tried to run her off the road earlier that day.[1] No one at the scene saw the shooter or the shooter's vehicle, although many people heard loud noises that sounded like firecrackers or gunshots. McNally denied be-

1. While they were both driving, McNally allegedly motioned for Smith to pull over. She kept driving.

ing in the area of the shooting, or possessing or firing a gun. The police did not recover a firearm.

The police identified McNally as a suspect based on his relationship with Smith and the alleged driving encounter earlier on the evening of the shooting. Police found four .45 caliber shell casings on the street in front of 82 Strawberry Drive. They also found three .45 caliber shell casings in McNally's aunt's SUV, which McNally drove the night of the shooting.[2] Police found GSR residue in that SUV and on McNally's hands. The State's ballistics expert, Carl Rone, determined that the shell casings found in the SUV and the street came from the same gun. Another expert, Elana Foster, testified that the evidence found on McNally's hands and in his aunt's SUV was gunshot residue. Foster testified that GSR on McNally's hands indicates that he either fired a gun, was near a gun when it was fired, or came into contact with a person or object that had GSR on it.

## ANALYSIS

### I. The Trial Judge Properly Instructed the Jury on the Issue of Reasonable Doubt.

■ McNally contends that the trial judge erred in his reasonable doubt jury instruction. He argues that the trial judge erroneously instructed the jury that it must be firmly convinced of McNally's innocence before acquitting him. Because McNally did not object timely to the jury

instructions, we review the trial judge's instruction for plain error.[3] An error is plain when it affects the defendant's substantial rights, and thus, affected the outcome of the trial.[4] Though the instruction included superfluous language, the trial judge did not commit plain error by instructing the jury as he did.

■ Jury instructions are not grounds for reversal if they are "reasonably informative and not misleading."[5] Some inaccuracies in jury instructions are permissible.[6] A jury instruction is grounds for reversal only where the "deficiency undermined the ability of the jury 'to intelligently perform its duty in returning a verdict.'"[7] All jury instructions are reviewed as a whole.[8]

In this case, the trial judge instructed the jury in part:

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. Therefore, if, based upon your conscientious consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find the defendant guilty.

If on the other hand, you think there is a real possibility or, in other words, a reasonable doubt that the defendant is not guilty, you must give the defendant the benefit of that doubt by finding the defendant not guilty.

■ McNally believes that the second paragraph of this instruction erroneously instructs the jury that he can only be

---

2. His aunt gave the police permission to search her vehicle.

3. Del. Sup.Ct. R. 8; *Brown v. State*, 897 A.2d 748, 753 (Del.2006) (internal citation omitted).

4. *Brown*, 897 A.2d at 753 (internal citation omitted).

5. *Floray v. State*, 720 A.2d 1132, 1137 (Del. 1998) (internal citation omitted).

6. *Id.* at 1138.

7. *Id.* (internal citation omitted).

8. *Id.*

acquitted if the jury has a reasonable doubt that he is not guilty, *i.e.* if the jury is firmly convinced that he is not guilty. While McNally is correct that a jury need not be firmly convinced that defendants are not guilty before acquitting them;[9] the jury instruction does not explicitly require McNally's interpretation.

In *Mills v. State*, we upheld the exact instructions at issue here.[10] McNally concedes that the phrase "reasonable doubt that the defendant is not guilty" is permissible because of our holding in *Mills v. State*.[11] He contends, however, that the instruction can be fairly read to require the jury to be "firmly convinced" that McNally did not commit the acts charged in order to acquit him. He claims that the instruction creates a higher threshold for acquittal than is constitutionally permissible.[12]

McNally misreads the instruction. The instruction requires a jury to be firmly convinced of proof *beyond* a reasonable doubt before convicting him, not be firmly convinced of innocence before acquitting him. Thus, in order to *convict* McNally the jury must be firmly convinced of each element of the crimes as charged. Although we do not find plain error in the jury instruction, we urge the Superior Court to reconsider using the expression "..., you think there is a real possibility or, in other words, a reasonable doubt that the defendant is not guilty" from their pattern instructions, to prevent any potential confusion. The resulting language could be simply phrased "... if you have a reasonable doubt about the defendant's guilt, ...."

## II. The Trial Judge Properly Admitted the State's Expert Testimony.

McNally argues that the State's ballistics expert did not provide a proper foundation for his testimony or explain how he derived his expert opinion. By admitting this expert's testimony, McNally contends the trial judge violated D.R.E. 702 and McNally's constitutional right to confront witnesses against him. Because McNally did not object to the expert's trial testimony, we review the trial judge's admission of the expert testimony for plain error.[13]

▆▆▆▆ A trial judge exercises discretion when deciding to admit expert testimony.[14] The trial judge is the gatekeeper for expert testimony and must assess whether the evidence is reliable and relevant.[15] "A witness may testify as an expert when qualified as an expert and the trial judge determines that the witness has scientific, technical or other specialized knowledge that will assist the finder of fact in understanding evidence or in determin-

9. *Mills v. State*, 732 A.2d 845, 849–50 (Del. 1999) (the State must prove each element of the charged offense *beyond* a reasonable doubt).

10. *Id.* at 852 (the sole difference in *Mills* is that the instruction is in one paragraph as opposed to the two paragraphs of this instruction).

11. *Id.* at 853 (the jury instruction read as a whole did not violate the defendant's Due Process rights).

12. *Id.* at 852 (the definition of reasonable doubt may not impose a higher degree of doubt than the Due Process clause requires for acquittal).

13. Del. Sup.Ct. R. 8; *Brown v. State*, 897 A.2d 748, 753 (Del.2006); *Martin v. State*, 1998 WL 985994, at *1 (Del.) (alleged constitutional violations are reviewed for plain error when not objected to at trial).

14. *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 522 (Del.1999).

15. *Goodridge v. Hyster Co.*, 845 A.2d 498, 503 (Del.2004); *Nelson v. State*, 628 A.2d 69, 74 (Del.1993).

ing a fact at issue." [16] "Even though an expert may be qualified to opine within a recognized 'field,' that fact alone does not automatically guarantee reliable, and therefore admissible, testimony." [17] "It is critical that a trial judge be satisfied that any *generalized* conclusions are applicable to the *particular* facts of the case." [18] Although preferable, a testifying expert does not need to recall each detail of how he applied his generalized conclusions to the particular facts of the case.[19]

The State introduced Delaware State Police forensic firearms examiner, Carl Rone, to testify that all seven casings were shot from the same .45 caliber gun. The State proffered Rone as an expert based on his training and 20 years of experience in the ballistics field. Rone testified that he worked in the Delaware State Police Forensic Firearms Services Unit and personally examined the seven shell casings. Rone also testified about his relevant associations and publications. The trial judge permitted Rone to testify as a ballistics expert. The trial judge did not make an express finding on, and McNally did not object to, Rone's qualifications to testify.

McNally takes issue with Rone's comment that the casings had "similar markings" without explaining how he came to that conclusion or what that conclusion means to this case. Rone's opinion was crucial because it linked the shell casings at the scene of the crime with the shell casings in McNally's aunt's SUV. Rone explained that, during testing, he looked at the casings microscopically at various points on the casings to compare the markings. He testified that he was 100% certain that the casings came from the same

weapon. On cross examination, he could not remember which markings on the casings were compared in this case or how those markings were unique to the particular gun.

The State claims that any lack of recall goes to the expert's testimony's weight and not its admissibility. The State argues that McNally could have explored the foundation of Rone's opinion through cross examination. McNally did ask Rone questions about the locations of the markings and the types of markings on cross examination. Rone answered those questions in terms of how he typically handles ballistics, because he could not remember the specifics of this case. McNally's cross examination exposed credibility issues with Rone's opinion.

## A. *D.R.E. 702*

■ McNally does not contest Rone's qualifications. Instead he argues that Rone neither divulged the facts upon which he relied nor applied his principles reliably to the facts of the case. To admit an expert's testimony, the trial judge must comply with D.R.E. 702, which states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and

16. *Goodridge,* 845 A.2d at 503.

17. *Id.*

18. *Id.* (emphasis in original).

19. *Delaware v. Fensterer,* 474 U.S. 15, 19–20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985), *rev'ing Fensterer v. State,* 493 A.2d 959 (Del.1985).

methods reliably to the facts of the case.[20]

D.R.E. 702 requires the proffered testimony to provide relevant and reliable principles and methodology.[21] This rule does not require that the conclusions derived from those principles and methods be scientifically valid.[22] When the expert's application of his principles and methodology to the facts is challenged, the trial judge must determine that the expert "has a reliable basis in the knowledge and experience of [the relevant] discipline." [23]

Rone explained the principles and methods that he uses when testing casings for identifiable markings. He explained that when he tested the casings in this case he found "similar markings" that led him to conclude that the casings came from the same gun. Obviously it would have been more persuasive if Rone could recall how he arrived at his conclusion that the markings were similar, but we require the principles and methods—not the conclusions to be scientifically valid.[24] Thus, we cannot find plain error because Rone did explain his principles and methodology and applied those principles and methods to the facts. McNally was able to cross examine Rone on those principles and his methodology. McNally was also able to expose Rone's lack of recollection about the application of the methodology to the facts here.

## B. *Right to Confrontation*

 McNally is entitled to an *opportunity* to effectively confront witnesses against him. He is not entitled to helpful or effective confrontation.[25] Satisfying his right to confrontation, McNally had a "full and fair opportunity to probe and expose [the testimony's] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."[26] Rone's inability to recall the basis of his opinion went to the weight, not the admissibility, of his testimony.[27] It was for the jury to assess Rone's credibility.[28]

Because McNally had the opportunity to cross examine Rone we must find that the trial judge did not commit plain error by admitting Rone's testimony.

## III. The Trial Judge Properly Admitted the GSR Evidence Because the State Established the Chain of Custody.

 We review a trial judge's evidentiary rulings for abuse of discretion.[29] We review whether there is a reasonable probability that the evidence offered is what its proponent claims it to be.[30] Thus, if there is no issue of adulteration or tampering, we review the trial judge's rul-

20. D.R.E. 702.

21. *Nelson v. State*, 628 A.2d 69, 74 (Del.1993).

22. *Id.* at n. 6 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

23. *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 523 (Del.1999) (internal citation omitted).

24. *Nelson*, 628 A.2d at 74 n. 6 (citing *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786).

25. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985), *rev'ing Fensterer v. State*, 493 A.2d 959 (Del.1985).

26. *Id.* at 22, 106 S.Ct. 292.

27. *Id.*

28. *Id.* at 19, 106 S.Ct. 292.

29. *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008).

30. *Word v. State*, 2001 WL 762854, at *3 (Del.).

ing for abuse of discretion.[31] Absent an abuse of discretion, breaks in the chain of custody go to the weight rather than the admissibility of the evidence.[32] McNally objected to the GSR evidence because he contends that the State did not create a proper chain of custody.

Detective Donald Christie, Jr. took GSR samples from McNally's hands at 1:45 AM on January 7, 2007 and took GSR samples from McNally's aunt's SUV on January 8, 2007. The police mailed the samples to R.J. Lee Group, a private Pennsylvania laboratory, for analysis. At R.J. Lee Group, employee Michelle Barry removed the eight vials of samples from the storage locker and placed them on the Scanning Electron Microscope (SEM) stage for overnight analysis. Elana Foster, the manager of the Forensic Science Department at R.J. Lee Group, had previously trained Barry to place the testing items in numerical order on the SEM for microscopic analysis. The SEM process is automatic once it is turned on. Once testing begins, any tampering with the SEM can be detected.

At the end of the SEM process, the machine prints out microimages of the particles found. To verify the machine's conclusion, Foster and Dave Freehling each analyzed the evidence separately to verify the existence of gunshot particles such as lead and barium.

At trial, Foster testified about the SEM process, including Barry's part, in which Barry placed the vials on the machine and turned the machine on. She testified that she trained Barry. Finally, Foster testified that there was no reason to believe that standard operating procedure was not followed.

McNally objected to Foster's assumption that Barry properly placed the samples on the machine. McNally notified the trial judge of a pretrial letter he sent to the State, demanding the *presence* at trial of *all* forensic toxicologists and chemists in this case pursuant to 10 *Del. C.* § 4332. This demand included Barry, because she physically touched and handled the evidence.[33] The trial judge concluded that the State established a sufficient chain of custody, because there was no evidence of a reasonable probability that Barry's handling of the evidence suggested a breach of protocol that could lead to misidentifying or adulterizing the GSR evidence. The trial judge then admitted the GSR test results, and the State had Foster testify that McNally's hands and his aunt's SUV had GSR. Foster testified that GSR on McNally's hands meant that either McNally had fired a gun, was near someone who fired a gun, or touched someone or something with GSR.

■ In chain of custody issues, the party attempting to admit the evidence must eliminate possibilities of misidentification and adulteration, "not absolutely, but as a matter of reasonable probability."[34] Alleged breaks in the chain of custody are irrelevant.[35] The evidence does not suggest that Barry misidentified or adulterated the samples when she put them into the machine. That said, we find perplexing the State's assumption that it can unilaterally decide the importance of Barry's involvement in the chain of custody. McNally specifically subpoenaed Bar-

31. *Id.*

32. *Id.*

33. 10 *Del. C.* §§ 4331–32.

34. *Tricoche v. State,* 525 A.2d 151, 153 (Del. 1987); *accord Demby v. State,* 2008 WL 534273, at *2 (Del.).

35. *See Guinn v. State,* 841 A.2d 1239, 1241 (Del.2004).

ry for trial. As with a Superior Court Criminal Rule 16 discovery demand, the State did not have the discretion to ignore subpoenas. The State should strictly comply or seek relief from compliance from the Court in the future. Although we do not condone the State's assumption that Barry's presence would have been superfluous and its failure to respond to McNally's pretrial demand for the witness' appearance, we do not conclude that Barry's described limited involvement in the chain of custody suggests a reasonable probability of adulteration or tampering. Therefore, the trial judge did not abuse his discretion by admitting the GSR evidence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the Superior Court.