# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No. 1809003017 |
| | ) | |
| | ) | |
| NEKI GIBBS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Submitted: September 4, 2019
Decided: December 9, 2019

*Upon Consideration of Defendant's Motion in Limine,*
**DENIED.**

Daniel McBride, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

1

## I. INTRODUCTION

Defendant Neki Gibbs ("Defendant") faces charges for Murder First Degree,[1] and Criminal Mischief[2] related to two separate shooting incidents. He files this Motion *in Limine* under Superior Court Criminal Rule 16(a)(1)(E) and D.R.E 702 and 703 and challenges the admissibility of the State's ballistic evidence that seeks to connect both incidents.[3] The Court finds that the State has met its burden in showing by a preponderance of the evidence that the expert testimony is admissible. Although Defendant's Motion *in Limine* is denied, the Court agrees to place limitations on the opinions offered by the ballistic evidence expert.

## II. FACTUAL AND PROCEDURAL HISTORY[4]

On January 30, 2018, the Newark Police Department received a complaint for a shots fired in the area of 100 South Chapel Street ("Newark Incident").[5] On February 5, 2018, the Wilmington Police Department responded to a home at 2230 Lamotte Street in Wilmington, Delaware and discovered the bodies of two victims

---

[1] *See* Indictment, True Bill Filed, *State of Delaware v. Neki T. Gibbs*, Crim. ID No. 1809003017, D.I. 1 (Sep. 10, 2019).

[2] Def.'s Mot. at ¶ 2.

[3] *Id.* at ¶ 3.

[4] The Court's recitation is based on Defendant's Motion *in Limine*, *State of Delaware v. Neki T. Gibbs*, Crim. ID No. 1809003017, D.I. 19 (Aug. 9, 2019) [hereinafter "Def.'s Mot."]; State's Response to Defendant's Motion *in Limine*, *State of Delaware v. Neki T. Gibbs*, Crim. ID No. 1809003017, D.I. 23 (Sep. 4, 2019) [hereinafter "State's Resp."].

[5] *See* State's Resp.

("Wilmington Incident").[6] Both died from gunshot wounds.[7] Six spent 9 mm shell casings, three spent projectiles and four live rounds of 9mm ammunitions were recovered from the scene of the Wilmington Incident.[8] On September 10, 2019, Defendant was indicted for Murder First Degree as to the Wilmington Incident,[9] and Criminal Mischief as to the Newark Incident.[10]

On November 24, 2018, the State submitted its initial discovery regarding its intended ballistic expert.[11] On March 18, 2019, the State submitted a letter indicating that it was going to "call a firearms and tool mark examiner to testify as an expert[.]"[12] In May 2019, the State sent documents related to ballistics found at both Newark and Wilmington scenes.[13] In its discovery, the State included that its

---

[6] *Id.* at ¶ 2.

[7] *Id.*

[8] *Id.*

[9] *See* Indictment, True Bill Filed, *State of Delaware v. Neki T. Gibbs*, Crim. ID No. 1809003017, D.I. 1 (Sep. 10, 2019).

[10] Def.'s Mot. at ¶ 2.

[11] State's Resp. at ¶ 4 ("[Pursuant to Rule 702 through 705 of the Delaware Uniform Rules of Evidence, this letter is to inform you that the State intends to call a Firearm and Tool mark Examiner to testify as an expert in the area of ballistic and firearm comparison. In summary the expert will testify that the shell casings recovered . . . in connection with [the Newark and Wilmington] incident[s] . . . were fired from the same weapon. The State will provide the identity of the expert, and his or her full report upon identification of such expert and the completion and receipt of the report. A NIBIN match, which notes the conclusion of analysis, has been provided with this letter[.]").

[12] *Id.* at ¶ 5. (The State's March 18, 2019 submission included "the ballistic reports generated by firearms and toolmaker examiner [Freese] with the Delaware State Police Forensic Firearms Services Unit.").

[13] Def.'s Mot. at ¶ 4 (The State's cover letter states that Robert Freese will opine that the casings from the Newark incident were fired from the same firearm as those from the Wilmington incident.); Letter from State, *State of Delaware v. Neki T. Gibbs*, Crim. ID No. 1809003017, D.I. 16 (May 30, 2019).

expert Robert Freese ("Freese") would offer opinion regarding two "NIBIN hits."[14] On May 30, 2019, the State received a letter from Defense counsel asking for an expert report for a comparison of toolmarks from the two different incidents.[15] On June 27, 2019, the State submitted an email indicating that a "NIBIN hit is the same as the other [expert] reports, just in a different format."[16]

On August 9, 2019, Defendant submitted a Motion *in Limine* to exclude the State's expert evidence, produced by Freese, connecting the Wilmington and Newark Incidents.[17] On September 4, 2019, the State filed its Response in Opposition to Defendant's Motion *in Limine*.[18]

## III. STANDARD OF REVIEW

The Court acts as a gatekeeper regarding the admissibility of expert testimony.[19] The trial judge determines "whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[20] Delaware Rule of Evidence 702 governs the admissibility of expert

---

[14] *Id.* at ¶ 5.

[15] State's Resp. at ¶ 7.

[16] Def.'s Mot. at ¶ 9; *see* State's Resp. at 7 (The State's email "explain[ed] that the 42 pages of documents provided with its expert disclosure *already* contained such a report.").

[17] *See* Def.'s Mot.

[18] *See* State's Resp.

[19] *Li v. GEICO Advantage Ins. Co.*, No. CV N18C-02-160 ALR, 2019 WL 4928614, at *1 (Del. Super. Ct. Oct. 7, 2019) (citing *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 583 (Del. 2007)).

[20] *State v. Phillips*, No. ID 1210013272, 2015 WL 5168253, at *3 (Del. Super. Ct. Sept. 2, 2015) (quoting *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006)).

testimony, providing that an expert witness "may testify . . . , if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[21] The party introducing expert testimony must "demonstrate by a preponderance of the evidence that their opinions are reliable."[22]

In determining "whether an expert has a reliable basis in the knowledge and experience of the relevant discipline,"[23] this Court applies the *Daubert*[24] standard. If the Court finds that expert testimony satisfies Rule 702 as interpreted under *Daubert*, "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence."[25]

---

[21] *Id.* (quoting D.R.E. 702).

[22] *Id.* (citing *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006) (citing *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994))).

[23] *Li*, 2019 WL 4928614, at *1 (citing *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521 (Del. 1999) (adopting the *Daubert* standard as the correct interpretation of Delaware Rule of Evidence 702)).

[24] Under *Daubert*, the Court considers: "(1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high-known or potential rate of error and whether standards controlling its operation exist; and (4) whether the theory or technique enjoys acceptance within a relevant scientific community." *Id.* (citing *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 584 (Del. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993))).

[25] *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)).

## IV. DISCUSSION

Defendant argues that a NIBIN hit is not an expert report within the meaning of relevant evidentiary rules and has not been peer reviewed nor supplemented with provision of error rates.[26] The State maintains that NIBIN hits are "the product of a manual examination conducted by the State's expert,"[27] stemming from a "manual[] [comparison] by the expert . . . using the *identical methodology as any other comparison . . . .*"[28] The State further emphasizes that such methodology "is the *only* method used by the Firearms and Tool Mark examiners at the Delaware State Police Forensic Firearms Services Unit."[29]

In *State v. Phillips*,[30] the Superior Court considered this issue and found the methodology of the Association of Firearm Toolmark Examiners ("AFTE")[31] reliable under *Daubert*.[32] In making this finding, the Court also discussed the use of

---

[26] Def.'s Mot. at ¶¶ 26-27.
[27] State's Resp. at ¶ 11 (citing Letter from State, *State of Delaware v. Neki T. Gibbs*, Crim. ID No. 1809003017, D.I. 17 (June 26, 2019)).
[27] Def.'s Mot. at ¶ 4.
[28] *Id.* (emphasis added).
[29] *Id.* (emphasis added).
[30] No. ID 1210013272, 2015 WL 5168253 (Del. Super. Ct. Sept. 2, 2015).
[31] *Id.* at *4 (citing *Rodriguez v. State*, 30 A.3d 764, 769 (Del. 2011) (The Court indicated that the conclusions of the AFTE methodology "are a product of an intellectually rigorous application of knowledge and experience appropriate to the field of expertise.").
[32] *Id.* at *5-7 (The court determined that under *Daubert* (1) "the AFTE firearms and toolmark identification theory is testable and has been tested[;]"[32] (2) "the AFTE theory satisfies the peer review and publication factor under *Daubert*[;]"[32] (3) "the AFTE theory satisfies the known or potential rate of error factor under *Daubert*[;]"[32] (4) "the AFTE theory satisfies the existence and maintenance of standards controlling the technique's operation factor under *Daubert*[;]"[32] and (5) "the AFTE methodology is generally accepted among professional examiners as a reliable method of firearms and toolmark identification . . . .").

the NIBIN system and its role in firearm and toolmark examinations.[33] Furthermore, in *McNally v. State*,[34] our Supreme Court concluded that it could not "find plain error [in the admission of expert testimony] because [the expert] *did* explain his principles and methodology and applied those principles and methods to the facts."[35] Here, the State proffers that its expert will do the same.

The Court finds that where the State's expert testimony is based on methodology previously held reliable under *Daubert*, the State has demonstrated by a preponderance of the evidence that the proposed expert testimony is reliable.[36] Following similar considerations under *McNally*[37] and *Phillips*,[38] the State will have the opportunity to introduce evidence that suggests a nexus between both shootings. Defendant may challenge the evidence through cross-examination.

Although admissible, the State concedes that its expert should not testify to being

---

[33] *Id.* at *2 ("The NIBIN system is a computer-based imaging system that assigns an algorithm to each image it sees based on a topographical view. Ballistics evidence is placed inside the system where it takes a photograph (i.e. digital image). It assigns values to aspects of each image by looking down at the item and producing a list of possibilities based on what it sees. The NIBIN system then searches its database for images that the lab has already entered into the system, or may also be sent out to different regions for comparison to their systems. Based on parameters entered by the examiner, the system limits and sends back a list of possible matches found, if any. Those images from the list are then evaluated on the screen to determine what items of evidence need to be physically examined. From that list, [the expert] conducts physical examination of the necessary items.").

[34] 980 A.2d 364, 370 (Del. 2009), *as amended* (Sept. 28, 2009).

[35] *Id.* at 370.

[36] *See generally id.* (finding AFTE methodology to be generally accepted among professional examiners as a reliable method of firearms and toolmark identification).

[37] *See generally id.*

[38] *See generally State v. Phillips*, No. ID 1210013272, 2015 WL 5168253 (Del. Super. Ct. Sept. 2, 2015).

"100% certain as to his findings."[39]   Therefore, limitations are appropriate. Defendant agrees that the expert should not testify as to the certainty of his findings but further asks that the expert's report delete any references to "match or identification."[40]  The State wishes to use the terms "identification" and "match."[41] At this juncture, the Court is not precluding the expert from using words such as "match" and "identification."   Both sides are invited to submit supplemental materials on the issue regarding the use of the term "match" or similar terminology but, at this stage, no authority is before this Court to support that the terms must be precluded in the context of ballistic evidence.

Although AFTE methodology "is generally accepted among professional examiners as a reliable method of firearms and toolmark identification,"[42] current trends in case law[43] suggest that courts are limiting the expert testimony in this area.

---

[39] State's Resp. at ¶ 17.

[40] Def.'s Mot. at ¶ 32.

[41] *Id.*

[42] *Phillips*, 2015 WL 5168253, at *7.

[43] Recently courts have reexamined the admissibility of firearms analyses and expert testimony on the subject because of "[c]oncerns about both the lack of a firm scientific basis for evaluating the reliability of forensics evidence and the subject nature of forensic ballistic comparisons . . . ." *Com. v. Pytou Heang*, 458 Mass. 827, 837 (2011) (citing *United States v. Willock*, 696 F. Supp. 2d 536, 546–547, 555–574 (D. Md. 2010); *United States v. Taylor*, 663 F. Supp. 2d 1170, 1173–1180 (D.N.M. 2009); *United States v. Glynn*, 578 F.Supp.2d 567, 568–575 (S.D.N.Y.2008); *United States v. Diaz*, U.S. Dist. Ct. No. CR 05–00167 WHA, 2007 WL 485967 (N.D. Cal. Feb. 12, 2007); *United States v. Natson*, 469 F. Supp. 2d 1253, 1259–1262 (M.D. Ga. 2007); *United States v. Monteiro*, 407 F. Supp. 2d 351, 354–375 (D. Mass. 2006); *United States v. Green*, 405 F. Supp. 2d 104, 106–124 (D. Mass. 2005); *Fleming v. State*, 194 Md. App. 76, 97–109 (2010); *Commonwealth v. Meeks*, SUCR2002–10961, SUCR2003–10575, 2006 WL 2819423 (Sept. 27, 2006)).

8

Experts have been precluded from testifying: (1) they are "certain" or "100%" sure of their conclusions that two items match, (2) there is a match to "the exclusion of all other firearms in the world," or (3) it is a "practical impossibility" that any other gun could have fired the recovered materials.[44] Based on the trend in case law,[45] the Court agrees that where "the process by which a firearms examiner declares a 'match' remains inherently subjective,"[46] and where the State agrees that the expert is not to testify with "100%" certainty, the State's expert testimony will be limited, accordingly.

The expert is precluded from testifying to being 100% certain as to his findings.

---

[44] *United States v. White*, No. 17 CR. 611 (RWS), 2018 WL 4565140, at *3 (S.D.N.Y. Sept. 24, 2018) (denying defendant's motion to exclude expert testimony, but granting motion to limit precluding expert from testifying to "any specific degree of certainty as to his conclusion that there [was] a ballistics match between the firearms seized from [defendant] and those used in the various shooting incidents."); *Gardner v. United States*, 140 A.3d 1172, 1177 (D.C. 2016) (holding that although admission was harmless error, that expert should not have been permitted to "give an unqualified opinion, or testify with absolute or 100% certainty, that based on ballistics pattern comparison matching a fatal shot was fired from one firearm, to the exclusion of all other firearms[.]"); *United States v. Ashburn*, 88 F. Supp. 3d 239, 250 (E.D.N.Y. 2015) (holding that toolmark and firearms identification was a proper subject of expert testimony, but expert would be precluded from testifying to being "certain" or "100%" sure of his conclusions of match); *United States v. Willock*, 682 F. Supp. 2d 512, 535-36 (D. Md. 2010), *aff'd in part sub nom. United States v. Thomas*, 490 F. App'x 514 (4th Cir. 2012) (holding that firearms identification testimony was admissible, but indicating that expert should not be able to "state his conclusions regarding the match with any degree of certainty."); *United States v. Taylor*, 663 F. Supp. 2d 1170, 1180 (D.N.M. 2009) (holding that expert could testify to/within reasonable degree of certainty, *not* scientific certainty and *not* to "the exclusion, either practical or absolute, of all other guns."); *Com. v. Pytou Heang*, 458 Mass. 827, 837 (2011) (holding forensic ballistics testimony was reliable, but that the phrase "reasonable scientific certainty" should be avoided).
[45] *White*, 2018 WL 4565140 at *3; *Gardner*, 140 A.3d at 1177; *Ashburn*, 88 F. Supp. 3d at 250; *Willock*, 682 F. Supp. 2d at 535-36; *Taylor*, 663 F. Supp. 2d at 1180; *Pytou Heang*, 458 Mass. at 837.
[46] *Pytou Heang*, 458 Mass. 827 at 837.

If he testifies to a "match," the expert may not testify to conclusions that suggest there is a match to "the exclusion of all other firearms in the world," or that it is a "practical impossibility" that any other gun could have fired the recovered materials. He may not testify within a reasonable degree of "scientific" certainty and may not state his conclusions regarding a "match" with any degree of certainty.

## V.  CONCLUSION

This Court is satisfied at this stage that the State has met its burden regarding the reliability of the expert's methodology concerning its proffered ballistic evidence. For these reasons, Defendant's Motion *in Limine* is **DENIED.**  The expert may testify with the above limitations.

**SO ORDERED.**

_____

Vivian L. Medinilla
Judge

oc:    Prothonotary

10